**VIBRA BRUSH CORP., Plaintiff,**

v.

**Robert SCHAFFER, Postmaster, New York, N. Y., Defendant.**

United States District Court
S. D. New York.
April 3, 1957.

Milton A. Bass, New York City, for plaintiff.

Paul W. Williams, U. S. Atty., New York City, for defendant. Robert J. Ward, New York City, of counsel.

WEINFELD, District Judge.

The plaintiff seeks a preliminary injunction to enjoin the Postmaster from enforcing a fraud order under which all mail, registered and unregistered, is returned to the sender marked "Fraudulent" and postal money orders payable to plaintiff are returned to the remitter.

The case centers about an electrically operated mechanical brush called Vibra Brush which plaintiff advertised extensively, and which was sold through the mails. The brush was advertised as a new invention which "Shows You How You May Save Your Hair and Grow Hair Again". The Post Office Department filed a complaint which charged that the advertising claims were false and that the plaintiff was conducting a fraudulent scheme for obtaining moneys through the mails in violation of §§ 259 and 732 of Title 39 of the United States Code Annotated. After extensive hearings at which plaintiff was represented by counsel the hearing examiner sustained the charges. An administrative appeal by plaintiff failed and the fraud order was issued. The present action to enjoin enforcement of the order followed.

The Government cross moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. dismissing the complaint on the ground that no genuine issue of fact exists and it is entitled to judgment as a matter of law. Its basic position is that the finding of the hearing examiner that plaintiff's representations with respect to the brush were false and fraudulent was based upon adequate and substantial evidence, that the hearing was fair and the administrative procedure proper, and hence such administrative findings cannot be disturbed by this Court. The Government concedes, conversely, if the administrative record is defective in any respect, plaintiff is entitled to relief as a matter of law. The parties are in agreement that there are no triable issues of fact and either one or the other is entitled to summary judgment as a matter of law.

The applicable principles of law are not in dispute. The power vested in the Postmaster General "upon evidence satisfactory to him" to deny the use of the mails to those engaged in fraudulent claims[1] may not be interfered with by the courts unless the executive has exceeded his authority or is palpably wrong.[2] To sustain the issuance of a fraud order by the Postmaster two essential requisites must appear: (a) that the claims are unfounded;[3] and (b) intent to deceive.[4] And even though the court, as the original trier of the facts, might have reach-

---

1. 39 U.S.C.A. §§ 259, 732.

2. Public Clearing House v. Coyne, 194 U.S. 497, 509, 24 S.Ct. 789, 48 L.Ed. 1092; Bates & Guild Co. v. Payne, 194 U.S. 106, 109, 24 S.Ct. 595, 48 L.Ed. 894.

3. Leach v. Carlile, 258 U.S. 138, 42 S.Ct. 227, 66 L.Ed. 511; Reilly v. Pinkus, 338 U.S. 269, 70 S.Ct. 110, 94 L.Ed. 63.

4. Seven Cases v. United States, 239 U.S. 510, 36 S.Ct. 190, 60 L.Ed. 411.

ed a different conclusion, it may not substitute its own judgment if there is substantial evidence to support the findings of fact made by the Postmaster.[5] Thus the court's power to upset a finding by the Postmaster that the mails are being used in furtherance of a fraudulent scheme is restricted to those instances where there is no substantial evidence reasonably to support his conclusion.[6] Against the background of these principles we consider the plaintiff's contentions upon which it relies to enjoin enforcement of the fraud order.

The grounds of attack are both procedural and substantive. The plaintiff contends (1) there was no substantial evidence of fraud in fact; (2) there was no substantial evidence of an intent to deceive; (3) material error was committed in the refusal to permit testimony of an advertising expert as to the meaning of the advertisement.

The complaint, upon which the proceeding before the Post Office Department was initiated, was based upon a typical advertisement, the leading lines of which were prominently set forth in contrast to other portions thereof, and read "AT LAST! NEW INVENTION SHOWS HOW YOU MAY SAVE YOUR HAIR AND GROW HAIR AGAIN." The complaint charged:

"That by means of [the typical advertisement the plaintiff is] representing to the public in substance and effect:

"a. That for any user thereof, VIBRA BRUSH' * * * 'Shows You How You May SAVE YOUR HAIR and GROW HAIR AGAIN';

"b. That for any user of 'VIBRA BRUSH', ' * * * if your roots still have life in them, you CAN do something NOW about baldness, dandruff, and thinning and falling hair', i. e., the use of

'VIBRA BRUSH' as directed will prevent the occurrence of baldness for any user thereof;

"c. That 'Medical science recommends massage and brushing' to 'SAVE YOUR HAIR and GROW NEW HAIR AGAIN';

"d. That 'VIBRA BRUSH' will give any user thereof 'the proper amount of hair-saving massage and brushing' to 'SAVE YOUR HAIR and GROW HAIR AGAIN';

"e. That 'VIBRA BRUSH' will give any user thereof 'the proper amount of hair-saving massage and brushing' that 'Medical science recommends' to save hair and to grow new hair;

"f. That 'VIBRA BRUSH' does for you what no manual massage and brushing can do alone;

"g. That for any user thereof, 'VIBRA BRUSH' 'RELIEVES TENSION THAT MAY BE CONTRIBUTING TO HAIR LOSS';

"h. That any person suffering from 'nervous tension' or 'Emotional tension' resulting 'in falling hair and baldness' will be able to 'relieve' [i. e., adequately treat, alleviate and cure] such condition by the use of 'VIBRA BRUSH' as directed;

"i. That for any user thereof, 'Right in the privacy of your own home in only a few moments a day VIBRA BRUSH can [i. e., will] revitalize [i. e., give new life to or regrow] you hair and make you really proud of your appearance';

"j. That within 2 weeks of commencement of use of 'VIBRA BRUSH' any person will be 'delighted and thrilled with results' and will 'say it's the greatest blessing ever designed for the hair'; i. e., that by the use of 'VIBRA BRUSH' new hair will grow within 2 weeks for any user thereof;

5. Leach v. Carlile, 258 U.S. 138, 139, 42 S. Ct. 227, 66 L.Ed. 511.

6. National Conference on Legalizing Lotteries, Inc., v. Farley, 68 App.D.C. 319,

96 F.2d 861, certiorari denied 305 U.S. 624, 59 S.Ct. 85, 83 L.Ed. 399; Putnam v. Morgan, C.C.S.D.N.Y., 172 F. 450.

"k. That 'if you are bald, or have thinning hair, 'VIBRA BRUSH' may [i. e., will] be able to save you! Just on the market, this electric brush sends its vibrations, which stimulate and massage the scalp and help in the revitalizing of starved follicles'; i. e., that 'VIBRA BRUSH' will revitalize starved follicles for any user thereof, thereby preventing and curing baldness;

"l. That 'ELECTRIC VIBRA BRUSH is a revolutionary new kind of brush', is an 'AMAZING NEW INVENTION' and 'a sensationally new kind of hair brush'; i. e., that the principles employed in 'VIBRA BRUSH' were heretofore unknown to medical science and that the said device is a new invention;

"m. That any user of 'VIBRA BRUSH' may expect results in hair growth and 'new lustre and vigor' of the hair similar to that depicted in the photographs of users accompanying said advertisement."

First, as to the claim there was no substantial evidence of fraud in fact which necessarily involves a consideration of what representations were contained in the advertisement. The hearing examiner found that the representations charged in the complaint were contained in the advertisements which were aimed at and intended to appeal to the public generally. In substance he found that the advertisement in its entirety gives the impression that the device will save and grow hair.

The only evidence to support this finding was the advertisement itself. The plaintiff contends there is a complete lack of evidence to uphold it. It points to certain reservations in the advertisement such as "If your hair roots are dead there is nothing in the world you can do about baldness and falling hair. But if your hair roots still have life in them you CAN do something NOW about baldness, dandruff, thinning and falling hair", and asserts that they dispel any inference to support a finding that the brush was represented as useful in all cases of baldness and falling hair. It is true that these statements read separately and taken out of context would tend to eliminate a claim of representation as to the efficacy of the brush in all cases. However, these reservations are in small print and must be considered against the typography of the advertisement as a whole with its lead lines 'SAVE YOUR HAIR—GROW HAIR AGAIN' in heavy bold print, and also in conjunction with other statements in the balance of the advertisement set forth in small print which become gradually finer and smaller toward the very end of the advertisement—so much so that one with normal vision has great difficulty in reading it.

█ It is not each separate word or a clause here and there of an advertisement which determines its force, but the totality of its contents and the impression of the entire advertisement upon the general populace. Donaldson v. Read Magazine, 333 U.S. 178, 185–186, 68 S.Ct. 591, 92 L.Ed. 628; Gottlieb v. Schaffer, D.C.S.D.N.Y., 141 F.Supp. 7, 17. The ultimate impression upon the reader results not only from the total of what is stated but also from what is reasonably implied. Aronberg v. Federal Trade Commission, 7 Cir., 132 F.2d 165, 167.

Accordingly, considering the advertisement in totality and in terms of its language, setting, print and impression, the finding of the hearing examiner as to the representations contained therein is amply supported by the record.

Next, on the issue as to truth or falsity of the representations both sides offered expert medical testimony.[7] Needless to say the experts disagreed, although the area of disagreement is rather confined.

The Government experts testified that basically there are two types of baldness in the male, one, the most common, called the pre-senile or senile type which comprises the vast majority of all cases. One

7. See Walton v. Sherwin-Williams Co., 8 Cir., 191 F.2d 277, 284.

doctor testified that these constituted 99% of all cases. In this type the basic cause is attributable to hereditary factors. With respect to the hereditary type, the Government doctors agreed there is no effective treatment or cure, that apparently something happens to the hair follicles which is not remedial; that the follicles either shrink or atrophy and stop producing cells, with the result that the hair simply stops growing. The doctors also testified that once this type of baldness manifested itself with the resultant thinning and loss of hair, neither brushing, massaging nor deep massage could induce the re-growth of normal hair. Both doctors were in accord that there is no known effective cure for this type of baldness and that the medical profession is in agreement that nothing can be done for it.

Indeed, one doctor who disclaimed facetiousness, recalled the old vaudeville standby that the best way to save hair is in a cigar box. The other doctor, perhaps putting it more delicately, stated that the male-type baldness is an unrelenting disease in which "you must instruct the patient to accommodate his ego to his destiny."

In the view of the Government's experts, Vibra Brush does not massage the scalp but merely vibrates it and does not differ from any ordinary brush in its effect on the scalp; and it will neither save nor grow new hair.

Other types of baldness—that is the very small percentage (whether one percent or a larger percentage of all cases) which are not due to hereditary factors—fall into several categories.

Ninety percent of this limited group are classified as alopecia areata, and the major cause is psychological in origin. Since emotional factors are involved, therapeutic and psychiatric approaches may remove or relieve the emotional factor and frequently will result in reactivating the hair follicles and cause hair to grow again. In such instances, one of the Government doctors testified that physical treatment plays no part in the regrowth of hair but that psychological treatment is an essential. And in his view the brush would not remove or relieve psychological factors or emotional and nervous tensions which might have been possible factors resulting in hair loss or baldness of the alopecia areata type. The other Government doctor, disclaiming that she was a psychiatrist, testified she did not know whether the stimulation of the brush woud relieve emotional tensions but suggested there are people who, if they handle a mechanical device might be relieved of their problems to the same extent as people who look at motion pictures to relieve their tensions.

The remaining 10% of the other types of baldness (due to non-hereditary factors) is attributable to systemic diseases such as typhoid fever, measles, meningitis and other high fever diseases. In these cases, when the underlying disease which caused the condition of baldness is remedied, frequently the hair will regrow without treatment.

In sum, the Goverment doctors concluded that the brush was valueless in the treatment of any of the three types of baldness.

Plaintiff's experts agreed with those of the Government that once the hair follicles were dead no effective cure or treatment was known for baldness—and this situation applied to the vast majority of cases. The diversity of opinion falls within a very narrow compass. Plaintiff's doctors differed with the Government's on but two essential points: the percentage of baldness due to hereditary factors and the efficacy of massaging and brushing in treating certain cases of alopecia areata. Their basic counterposition centered about certain types of alopecia areata—other than those resulting from systemic diseases. Within this group they contended that in a limited number of cases a causative factor of baldness or falling hair was insufficient circulation and if the hair follicles were still alive then Vibra Brush had a stimulating and vibrating value which probably could increase circulation, thus

having some remedial effect upon a particular individual.

■ The hearing examiner resolved the conflict in medical testimony in favor of the Government; that he accepted the Government's experts' opinion and rejected the plaintiff's is not a fatal defect in the proceeding. There was abundant evidence to uphold the finding that the claims asserted in the advertisements were unfounded; and indeed that even in the limited number of cases of baldness or falling hair allegedly due to lack of circulation (if that were accepted as a causative factor), the Vibra Brush would be totally ineffective. A review of the transcirpt of the evidence shows substantial evidence to support the finding that "the Vibra Brush will not accomplish the results of restoring hair or prevent hair loss as represented by respondent in its advertisements."

■ We next consider plaintiff's contention that even though the examiner's finding as to fraud in fact may be upheld, there is insufficient evidence to support his finding of intent to deceive. As I have said in another case involving this issue: "An intent to deceive is rarely capable of direct proof, since this involves what is in a man's mind. It is hornbook law that this subjective element may be established by circumstantial evidence. It is not any single element segregated from the whole by which the determination is to be made but from the totality of all the acts, conduct and surrounding circumstances and the inferences which may reasonably be drawn from a combination of acts and circumstances."[8]

■ In this case the intent to deceive could be inferred by the exaggeration of the value of the brush in all cases of baldness without attempting to limit its applicability to the restricted group—the advertisement going far beyond any contention made by the doctors relied upon by the plaintiff.

There is nothing in the advertisement to indicate that the brush could be effective, if at all, in a limited number of cases—those where the alleged cause of baldness under the theory of plaintiff's doctors, was decreased circulation. On the contrary, the advertisement is directed to all and implicit is the suggestion that it can be of assistance generally to all who suffer hair loss regardless of cause. While there is the statement already noted that "if your hair roots are dead there's nothing in this world you can do", even the plaintiff's doctors acknowledged that the average reader could not determine for himself the cause of his baldness; further, they testified that in the limited number of cases in which they believed increased scalp circulation would be of some aid, they knew of no way to determine that a person suffering from hair loss has the problem by reason of decreased circulation, unless he submitted to a physical examination. Accordingly while under the theory advanced by the plaintiff the brush could possibly be of aid to a very restricted group, nonetheless the advertisement contained representations as to efficacy in saving or growing hair to the great mass of sufferers from baldness.

It is unnecessary to point up all the instances of the grossness of the claims contained in the advertisement. However, it is significant that it sets forth a two-week money back guarantee while the literature enclosed with the brush suggests a thirty-day trial period before a purchaser should reach a conclusion as to its effectiveness. In this connection it is noted that one of the plaintiff's experts, with respect to the lack of circulation cases, when asked whether the brush would produce hyperemia (increased circulation) of the scalp acknowledged that he could not say whether it would do so in "a minute, an hour or a year."

■ The plaintiff, to negate any intent to deceive, points to the fact that

8. Gottlieb v. Schaffer, D.C.S.D.N.Y., 141 F. Supp. 7, 17.

it resorted to medical opinion before writing the advertisement and that reliance on honest scientific opinion, even though a minority view, requires rejection of any finding of intent to deceive. See, American School of Magnetic Healing v. McAnnulty, 187 U. S. 94, 23 S.Ct. 33, 47 L.Ed. 90. However, the opinion which plaintiff claims it relied upon is considerably narrower than the representations contained in the advertisement. The exaggeration of the claims for the brush, far beyond the scope of the advice plaintiff received from its experts, is cogent evidence of intent to deceive. Leach v. Carlile, 258 U.S. 138, 42 S.Ct. 227, 66 L.Ed. 511. The circumstances of the forehand resort to expert opinion, and in particular the request to one of the doctors to search the literature for references to lack of circulation as a cause of baldness (at a time when the brush had not been put to practical use or demonstrated its value) together with the exaggerated claims, suggests consciousness of intent to deceive by preparation of a defense in advance of a charge. 2 Wigmore, Evidence §§ 256, 245 (3d ed. 1940).

Finally, the mere fact that in a limited area plaintiff's experts were prepared to and did take issue with others in the field did not necessarily cast the medical problem into the area of scientific uncertainty. Thus the Supreme Court in Reilly v. Pinkus held that there is no "inexorable rule that automatically bars reliance of the fact finding tribunal upon informed medical judgment every time medical witnesses can be produced who blindly adhere to a curative technique thoroughly discredited by reliable scientific experiences." 338 U.S. 269, 274, 70 S.Ct. 110, 113, 94 L.Ed. 63.

Here apart from reliable scientific experience there was also the common experience of man through the ages. As stated in the Gottlieb case, " * * *

where claims are completely opposed to common knowledge their falsity may be inferred from their preposterous character. Triers of the fact, whether courts, juries or administrators, do not require proof of the improbable and they may apply common knowledge and experience with respect to matters".[9]

The final ground of claimed error is the refusal of the hearing examiner to permit advertising "experts" called by the plaintiff to give their opinion as to whether the advertisement represents that "*every* user of the Vibra Brush will be helped by it and the effect of the advertisement upon the consumer". (Emphasis supplied.) The advertisement contained nothing of a scientific or technical nature which required explanation or the assistance of an expert for an understanding of its meaning or contents. The advertisement was aimed at the ordinary consumer and was published in media purchased by the lay public. The question at issue was the impression which the advertisement, taken as a whole, made upon the average man. This was a matter for the trier of the facts who clearly was in the position, without assistance of expert testimony, to make his finding. The hearing examiner in rejecting the proferred evidence stated he needed no aid in interpreting the advertisement. There was no error in refusing to receive the testimony of the so-called experts.[10] An expert's view of what he deems to be the psychological impact of the contents of an advertisement upon the reader, while it may be of help to those of the advertising world who write copy and advise the advertiser of a potential effective sales appeal, is of little help to an examiner who is called upon to decided from the advertisement as a whole the impression it is likely to make upon the general population—the proverbial man in the street. Donaldson v. Read Magazine, 333 U.S. 178, 68 S.Ct. 591, 92 L.Ed. 628.

9. Gottlieb v. Schaffer, D.C.S.D.N.Y., 141 F.Supp. 7, 16.

10. Gottlieb v. Schaffer, D.C.S.D.N.Y., 141 F.Supp. 7, 18; Walton v. Sherwin-Williams Co., 8 Cir., 191 F.2d 277, 284; 7 Wigmore, Evidence § 1955.

Upon a review of the record and a consideration of all contentions, no error was committed and the defendant's cross-motion for summary judgment is granted.

Settle order on notice.