**Norbert Stanley O'KON, Plaintiff,**

v.

**E. J. ROLAND, as Commandant, United States Coast Guard, Defendant.**

United States District Court
S. D. New York.

May 24, 1965.

Zwerling & Zwerling, New York City, for plaintiff.

Robert M. Morgenthau, U. S. Atty., for defendant; Louis E. Greco, Erwin W. Rossuck, Admiralty & Shipping Section, Department of Justice, New York City, of counsel.

WYATT, District Judge.

This is a motion by defendant for summary judgment dismissing the complaint and a cross motion by plaintiff for summary judgment for the relief demanded in the complaint. Fed.R.Civ.P. 56. The cross motion was made orally before the Court at the hearing of the motion.

The record establishes, and the parties are agreed, that there is no genuine issue as to any material fact.

The action is in form one for a mandatory injunction directing defendant Commandant to vacate an order made by him on January 7, 1965, and for a declaratory judgment that the order is void. 28 U.S.C. § 1361. The action is in substance one for judicial review of the January 7, 1965 order under Section 10 of the Administrative Procedure Act (5 U.S.C. § 1009; the "Act").

On August 13, 1963 plaintiff was employed as a senior assistant purser on the SS America, a vessel of the United States (46 U.S.C. § 248). He was serving under a certificate of registry issued by the Commandant of the Coast Guard (46 U.S.C. § 242). He also had a "Merchant Mariner's Document", apparently issued by the Coast Guard for identification purposes (46 CFR § 12.02–5) and in the case of pursers endorsed: "See Certificate of Registry" (46 CFR § 12.02–11(e) (1)).

On August 13, 1963 complaint was made by two male passengers that a purser had early that morning come to their stateroom and committed an act of sexual perversion on the body of another male passenger in that room. Plaintiff was later identified by this last mentioned passenger as having committed the act.

At all relevant times since shortly after this identification, plaintiff has been represented by counsel personally retained by him.

In due course, the act complained of was investigated as one of "misconduct" under 46 U.S.C. § 239(d). The "Investigating Officer" then prepared a charge of misconduct against plaintiff, with three specifications; the charge and specifications were served on plaintiff on August 23, 1963. (46 CFR Part 137)

As required by the Act taken with 46 U.S.C. § 239(g), a number of hearings were held between September 12, 1963 and April 29, 1964 before an Examiner.

Under date of June 23, 1964 the Examiner made "the initial decision" (5 U.S.C. § 1007(a)).

The decision found that the first specification had been proved, that the second and third specifications were deemed merged and as such found proved, and that the charge of misconduct had thus been proved.

The order made on the decision revoked the certificate of registry of plaintiff, his "Merchant Mariner's Document" and "all other valid licenses * * *" etc.

There was then an appeal to defendant as Commandant of the Coast Guard. 5 U.S.C. § 1007; 46 U.S.C. § 239(g); 46 CFR §§ 137.30–1 and following.

The "grounds for appeal" filed for plaintiff (46 CFR § 137.30–1) were (1) that the decision was contrary to the weight of the evidence, (2) that the Examiner had considered facts not in evidence, and (3) that the Examiner had "pre-determined and prejudged" the plaintiff. These grounds were elaborated in a memorandum of law submitted to the Commandant, as follows: (1) the decision was arbitrary, unreasonable and not supported by the evidence, (2) the erroneous acceptance of testimony of an "unqualified expert witness" was so prejudicial as to deny plaintiff a fair hearing, (3) there cannot be any expert testimony to the capacity of a person to commit a homosexual act, and (4)

there was no corroboration of the complaining witness.

Under date of January 7, 1965, defendant Commandant made his decision, which affirmed the June 23, 1964 order of the Examiner. The Commandant rejected the testimony as such of the so-called "unqualified expert witness" and indeed all other testimony as to the tendency of plaintiff to commit the act. The Commandant, after a careful and detailed review, concluded that there was other "reliable, probative, and substantial evidence" which supported the decision.

After affirmance by the Commandant of the decision revoking the documents of plaintiff, this action followed.

■ The scope of review by this Court is set forth in the Act. In relevant part, the Act provides that an administrative decision such as that here shall be set aside by this Court if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or if "unsupported by substantial evidence". The Court is to "review the whole record" and to take account of "the rule of prejudicial error". 5 U.S.C. § 1009 (e). (This "rule" must mean simply that no "error" of the administrative body will be considered unless it was prejudicial". United States ex rel. Lindenau v. Watkins, 73 F.Supp. 216, 224–225 (S.D.N.Y.); reversed on other grounds, United States ex rel. v. Watkins, 164 F.2d 457 (2d Cir. 1947).)

Before the Examiner and the Commandant there was only one central issue of fact: did plaintiff commit the act charged? Both officers recognized the grave character of the charge and acted with appropriate care.

Before this Court the issue is not whether plaintiff did or did not commit the act; this Court is not called upon to decide that issue. Rather, the Court is to determine whether the administrative decision is supported by "substantial evidence" and also whether in any controlling degree it is "not in accordance with law".

■ The Court has read and reviewed the whole record and is satisfied that there is "substantial evidence" within the meaning of the statute to support the order of revocation. There is no need to set forth the evidence in any detail. It is enough to refer to testimony as to the initial complaint by the passenger, his testimony to striking the intruder "on his left side of his face— well, the right side, he would be facing— right under the cheek bone, at least in that general area" (SM 85), testimony of another occupant of the cabin to the presence of an intruder, identification by the complaining passenger of plaintiff as the intruder and attacker, existence of a bruise and swelling on the left cheek of plaintiff when first seen in the course of investigation, and evidence of execution by plaintiff of an accident report listing the cause of his face condition as "unknown". True, plaintiff denied the charge from the beginning and under oath at the hearing; he specifically denied signing the accident report when the word "unknown" was there. But, as indicated, there was substantial evidence to the contrary.

A specific point raised for plaintiff deserves notice. This relates to the testimony received by the examiner on rebuttal from Dr. Osher, a physician who was chief surgeon on the America. Osher first testified on the case in chief for the Coast Guard Investigating Officer supporting the charge. After his direct testimony in chief, on cross examination by counsel for plaintiff Osher testified that the "ability" of plaintiff was "excellent", that his "reputation on the ship" was "best to deal with" and that his "demeanor" with passengers was "excellent" (SM 42).

Later, as part of plaintiff's case and without objection, questions were asked of and answered by witnesses who knew plaintiff as to whether they believed plaintiff "capable of the act" (e. g., SM 212). Their answers were emphatically in the negative.

Dr. Osher was among the witnesses called on rebuttal. It was shown that he had known plaintiff aboard ship for between two and three years and had seen him daily aboard ship. He was asked about the "character and reputation" of plaintiff and replied that "we refer to him as an AC-DC, a person with homosexual tendencies" (SM 306). This was objected to for plaintiff, among other reasons because it was a "characterization" and "vindictive" (SM 306). The objection was overruled (SM 307). Similar testimony was later given by two lay witnesses.

The Coast Guard Investigating Officer then developed that in his medical training Dr. Osher had received lecture instruction in psychiatry and had worked with clinic patients in psychiatry over a period of four years (SM 307, see SM 319). He was then asked his opinion whether plaintiff was "a person with capabilities of sexual perversion" (SM 308) and over objection answered in the affirmative. The doctor then testified that he based his opinion on an incident once reported to him by a passenger and on the fact that the doctor had once seen a 15 year old boy with a coctail invitation signed by plaintiff (SM 309). Objections to these answers were overruled (SM 309). Further opinion testimony was given by the doctor.

The Examiner accepted the testimony of Dr. Osher as an expert and in reaching his decision against plaintiff relied on it to a substantial degree (see opinion, pages thirteen, eighteen, nineteen).

The Commandant, however, differed completely in this respect with the Examiner.

As a general proposition, the Commandant concluded that capability of sexual perversion was not a trait of character to which lay witnesses could testify. The Commandant also applied the so-called "opinion rule" to the character witnesses adverse to plaintiff. This rule, followed in the majority of jurisdictions—but criticized by scholars (see 7 Wigmore on Evidence (3d ed.) §

1986)—is that character must be proved only by reputation in the community and not by the personal opinion of witnesses having knowledge of the accused. 7 Wigmore on Evidence (3d ed.) 152; McCormick on Evidence 334–335. The Commandant thus concluded that he would "disregard entirely the lay character testimony adverse to Appellant" (opinion, page 6).

The Commandant further ruled (a) that Dr. Osher was not qualified as an expert and (b) that the basis for his opinion was in any event "insufficient in law" as any reason for the opinion (Commandant's opinion, pages 6, 7). The Commandant therefore gave no consideration to the character testimony of Dr. Osher, as expert or otherwise.

In this Court, a preliminary point is asserted for plaintiff as to the testimony of Dr. Osher of events and happenings. It is argued that since Dr. Osher had been "proven to be a liar and a totally unreliable witness" his testimony as to observed events and happenings should not be "allowed to stand" (memorandum for plaintiff, page 12). Mere statement shows that the argument is without any substance; admissibility of evidence does not depend on the degree of its credibility. The trier of the facts determines what weight to give all evidence.

The more substantial point for plaintiff is that the character testimony of Dr. Osher was received in error (as the Commandant concluded) and that this error was so prejudicial as to deny plaintiff a fair hearing. The suggestion for plaintiff is that even though there be substantial evidence to support the decision, a new hearing should be afforded him because of the alleged prejudicial error.

Despite the views of the Commandant on this evidence point, I am not able to agree that the Examiner committed error.

The Commandant was of the opinion that a lay witness could not express an opinion as to whether a particular person

had a reputation for tendencies to, or capabilities of, sexual perversion or an opinion based on personal observation whether a particular person had such a tendency or capability (opinion, page 6). It seems to me, however, that a tendency to, or capability of, sexual perversion is a trait of character which, in these later days at least, is a matter of private and public comment in the community. Homosexuality and its outward signs are matters of conversation and also of frequent discussion in the press and periodical literature. See, for example, TIME Magazine, February 12, 1965, page 44; Bieber, Speaking Frankly on a Once Taboo Subject, August 23, 1964, New York Times, § 6 (Magazine) page 75.

With reference to character evidence in respect of a defendant in a criminal case, Wigmore states the governing principle: "the character or disposition offered, whether for or against him, must involve the *specific trait* related to the act charged" (1 Wigmore on Evidence (3d ed.) 458 (emphasis in original)). The following passage from an argument in 1794 of the great Thomas Erskine is cited with approval by Wigmore (at the same place, page 459):

> "The meaning of witnesses to character is this; for instance, put the case of a man who is charged with a crime of a particular description,— suppose a man charged with an unnatural crime; would it be any evidence at all to that man's character that he paid his bills regularly, and that he was not a dishonest man, or anything of that sort? No; your examination to character must always be analogous to the nature of the charge; and you would there inquire whether he was a man of chastity; you would inquire into his regard for women, into his morals, and into his conversation, so as it might rebuff any such horrible and detestable idea having passed in his mind, that he was a man capable in the ordinary course of his life of entertaining such opinions and making use of such expressions."

Wigmore cites with approval at the same place an Alabama decision where the charge was battery upon a woman and the defendant's character for "running after women" was admitted (Balkum v. State, 115 Ala. 117, 22 So. 532 (1897)).

Evidence was admitted in a California case of the reputation of a defendant in a sex perversion case "for morality, chastity, and nonhomosexuality". People v. Sellers, 103 Cal.App.2d 830, 230 P.2d 398 (1951). This decision was later disapproved on another point but admission of the evidence described was not disapproved. People v. Jones, 42 Cal.2d 219, 266 P.2d 38, 42–43 (Sup.Ct. of Calif. 1954).

The evidence of normal marital relations here offered for plaintiff is properly designed to show that plaintiff is not a person having a trait of character inclining toward, or making capable of, an act of perversion.

It may be difficult for a witness to testify respecting the particular trait of character here involved with the same degree of accuracy and certainty as possible respecting other traits, such as truth, peaceability, etc. This would affect the weight of the evidence rather than its admissibility. Cross-examination moreover can elicit the basis for any opinion expressed, as an aid in evaluating the testimony. Counsel for plaintiff thought it an appropriate trait of character on which to submit evidence and presented witnesses who in fact testified to an opinion that plaintiff was incapable (and thus without any tendency) of committing the act.

The testimony received from Dr. Osher was of two sorts: (a) as a lay person with personal knowledge of plaintiff and (b) as a medical expert.

In so far as Dr. Osher testified as a lay person, the remaining question is whether the Examiner erred in failing to apply the "opinion rule" already explained.

 The Commandant felt that the answer of Dr. Osher as to the "character and reputation" of plaintiff was in viola-

tion of the "opinion rule". The answer, as already noted, was: "we refer to him as an AC-DC, a person with homosexual tendencies" (SM 306). To me, this answer states the reputation of plaintiff on board ship rather than the personal opinion of Dr. Osher alone.

Even if the answer were properly considered a personal opinion as opposed to reputation, it was not error as I see it for the Examiner to receive the evidence. The classic discussion (among federal criminal opinions) of character evidence, including the "opinion rule", is in Michelson v. United States, 335 U.S. 469, 475–483, 69 S.Ct. 213, 93 L.Ed. 168 (1948). Mr. Justice Jackson here states the "opinion rule" and assumes that it is applicable in federal criminal trials but calls it "anomalous" and shows no great enthusiasm for it (335 U.S. at 477, 69 S.Ct. 213). No expression from the Court of Appeals for this Circuit has been found. Reference has been made to criticism of the "opinion rule" by scholars. In addition to Wigmore (already cited) see McCormick on Evidence 334. The Uniform Rules of Evidence (drafted by the National Conference of Commissioners on Uniform State Laws) does *not* adopt the "opinion rule" but would admit the opinion as to character of a qualified witness (Rule 46). So also the Model Code of Evidence of The American Law Institute (Rule 305(c)). Under these circumstances, it is hard to believe that a federal appellate court would hold it error for a trial judge to admit testimony of the personal opinion of a qualified witness as to the character of an accused.

█ In so far as testimony was received from Dr. Osher as an expert, the Commandant (as already noted) found that this was error because Dr. Osher was not qualified and because the basis for his expert opinion was "insufficient in law". I cannot agree.

██ The qualifications of Dr. Osher have already been set out. They could reasonably have been found to have qualified him to express an expert opinion. The Examiner so ruled (SM

308, 320). The meaning of the "admission" that he was not an expert, to which the Commandant referred (opinion, pages 6, 7), is not clear when read in context and, moreover, the "admission" is beside the point. The witness does not determine whether he is a qualified expert; this is for the trial judge. Once a determination of this question is made at the trial level, the settled rule is that on appeal such determination is not disturbed unless clearly erroneous. United States v. Baumgarten, 300 F.2d 807, 808 (2d Cir. 1962); Spitzer v. Stichman, 278 F.2d 402, 409 (2d Cir. 1960). Indeed, Wigmore states that the rule ought to be this: "The experiental qualifications of a particular witness are invariably determined by the trial judge, and will not be reviewed on appeal". 2 Wigmore on Evidence (3d ed.) 643.

As for the two alleged incidents given by Dr. Osher as the basis for his expert opinion, the Commandant could properly find that they are not sufficient to carry any weight with him. This does not mean, however, that it was error for the Examiner to admit the testimony. See Comment, The Admissibility of Expert Medical Testimony Based in Part Upon Information Received From Third Persons, 35 Sou.Calif.L.Rev. 193 (1962). Of course, in evaluating the opinion, the basis therefor is to be considered.

There remains a question not discussed by the Commandant, whether expert medical (psychiatric) testimony can properly be received on the question of sexual deviation or tendency to, or capacity for, that trait. Holding such testimony admissible is People v. Jones, the California case above cited. To the contrary is State v. Sinnott, 24 N.J. 408, 132 A.2d 298 (1957). While the decision is not rested on the fact, there is much discussion in the Sinnott opinion of the insufficiency of the examination by the psychiatrist in that case. On the general subject, see also Falknor and Steffen, Evidence of Character: From the "Crucible of the Community" to the "Couch of the Psychiatrist", 102 U. of Pa.L.Rev.

980 (1954); Curran, Expert Psychiatric Evidence of Personality Traits, 103 U. of Pa.L.Rev. 999 (1955). It may also be noted that Judge Goddard admitted expert psychiatric testimony as to a government witness in United States v. Hiss, 88 F.Supp. 559 (S.D.N.Y.1950); it is not clear whether this was on insanity or on the truth telling trait.

■ My conclusion is that expert psychiatric testimony of the kind here in question may properly be admitted in evidence. It may be noted that, while Dr. Osher did not testify that he relied on his personal observation of plaintiff (and thus greatly diminished the value of his opinion), it is the fact that Dr. Osher had daily contacts with plaintiff on board ship over a period of from two to three years.

■ Thus far, we have considered the Examiner's rulings as if made in a trial in a federal District Court. This is, of course, not the proper basis on which to test an administrative hearing. The Act contains this express provision (5 U.S.C. § 1006(c)):

"Any oral or documentary evidence may be received, but every agency shall as a matter of policy provide for the exclusion of irrelevant, immaterial, or unduly repetitious evidence and no sanction shall be imposed or rule or order be issued except upon consideration of the whole record or such portions thereof as may be cited by any party and as supported by and in accordance with the reliable, probative, and substantial evidence."

Acting within the authority of the Act, the regulations of the Coast Guard provide in relevant part as follows (46 CFR § 137.20–95):

"(a) In these administrative proceedings strict adherence to the rules of evidence observed in courts is not required. All relevant and material evidence, oral or written, shall be received except that hearsay evidence shall be rejected if the declar-

ant is readily available to appear as a witness.

\* \* \* \* \* \*

"(b) Findings must be supported by substantial evidence of a reliable and probative character. By this is meant evidence of such probative value as a reasonably prudent and responsible person is accustomed to rely on when making decisions in important matters. It is not limited to evidence which is considered to be competent evidence for the purpose of admissibility under the jury-trial rules."

■ Both under this statutory and administrative authority as well as on sound principle, "the body of jury-trial rules of Evidence" does not apply to such a hearing as was here conducted by the Examiner. 1 Wigmore on Evidence (3d ed.) § 4c. The following is quoted from 2 Davis, Administrative Law Treatise 282:

"The Administrative Procedure Act provides in § 7(c), without qualification: 'Any oral or documentary evidence may be received \* \* \*' If these words mean what they say, an agency whose action is subject to this provision cannot commit error by admitting particular evidence, no matter how incompetent or irrelevant the evidence may be."

There was thus no error by the Examiner in the reception of the rebuttal testimony of Dr. Osher.

But let us assume for the sake of argument that the Examiner was in error in the reception of such testimony, as indeed the Commandant found.

The contention for plaintiff is that such an error was "prejudicial", requiring that the revocation order be set aside even though otherwise supported by "reliable, probative and substantial evidence". 5 U.S.C. § 1006(c).

This contention does not in my view reflect the proper function of this Court in reviewing under the Act an administrative determination.

It is said in 2 Davis, above cited, at 283:

> "Only rarely has any federal court held that the mere admission of incompetent evidence is reversible error."

The one case cited by Davis as having reversed an administrative decision for admission of incompetent evidence is Tri-State Broadcasting Co. v. Federal Communications Commission, 68 U.S. App.D.C. 292, 96 F.2d 564 (1938), a decision condemned by Wigmore (1 Wigmore, above cited, at 33–34) and apparently not followed since.

The general rule appears to be as stated by the Court of Appeals for the District of Columbia in Sisto v. Civil Aeronautics Board, 86 U.S.App. D.C. 31, 179 F.2d 47, 51 (1949):

> "The admission of irrelevant or incompetent matter before an administrative agency does not constitute reversible error, if there is substantial evidence in the record to sustain the agency's determination."

See also Hyun v. Landon, 219 F.2d 404, 408 (9th Cir.), affirmed 350 U.S. 990, 76 S.Ct. 541, 100 L.Ed. 856 (1955); United States ex rel. Smith v. Curran, 12 F.2d 636 (2d Cir. 1926); Washington, Marlboro & Annapolis Motor Lines, Inc. v. Public Utilities Commission, etc., 114 F.Supp. 328, 333 (D.D.C. 1952) affirmed 93 U.S.App.D.C. 83, 206 F.2d 490 (D.C. Cir. 1953).

The whole record here, reviewed by this Court, establishes that plaintiff had a fair hearing, that the procedure followed was adequate to protect his fundamental rights, and that the order made is supported by "substantial evidence" which is also "reliable" and "probative". 5 U.S.C. §§ 1006(c) and 1009 (e). This being so, the order made should not be set aside even on the assumption that the rebuttal testimony of Dr. Osher was erroneously received.

For the reasons set out above and finding that there is no genuine issue as to any material fact and that defendant is entitled to judgment as a matter of law, the motion of defendant for summary judgment is granted. The Clerk is directed to enter judgment in favor of defendant dismissing the complaint

So ordered.