N. VAN DYNE ADVERTISING AGENCY, INC., d/b/a Soberin Aids Co., Plaintiff,

v.

UNITED STATES POSTAL SERVICE et al., Defendants.

No. 73 Civ. 4584.

United States District Court, S. D. New York.

Jan. 15, 1974.

Bass & Ullman, New York City, for plaintiff.

Paul J. Curran, U. S. Atty., S. D. N. Y., New York City, for defendants; Gerald A. Rosenberg, Asst. U. S. Atty., of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

The plaintiff brings this action to enjoin the defendant (hereafter the Postal Service) from enforcing a mail stop order which denied mail privileges to "Soberin Aids," a product advertised by plaintiff as allegedly helpful to "break the drinking cycle." Soberin Aids consists of syrup of ipecac, an emetic which usually induces nausea, followed by vomiting. Plaintiff has advertised "Soberin Aids" in magazines and solicited mail orders at $10 per purchase.

The Postal Service filed an administrative complaint charging that plaintiff was engaged in a scheme or device to obtain money through the mails by means of false representations in violation of 39 U.S.C., section 3005.[1] The complaint was directed toward plaintiff's advertisement in a magazine, which under the caption "DRUNK" in large block letters, reads:

"DOCTOR'S MARVELOUS MEDICAL DISCOVERY!

'World Famous Since 1943'

Thousands have been helped to break the drinking cycle INEXPENSIVELY. This Doctor's Medical Discovery helps promote an Aversion (dislike) to all alcoholic drinks. May be used secretly in Whiskey, Wine, Beer, Gin etc. Comes to you ready to use with instructions. This is a HOME METHOD GUARANTEED PURE. Not represented as a Treatment or as a permanent 'Cure', but it is a Doctor's recognized method for interrupting the drinking cycle for weeks, months and years. Time varying with the individual. A happy SOBERIN AIDS user writes: 'Please send me another bottle of SOBERIN AIDS, I had a bottle of Soberin Aids two years ago and my family lived in peace.

1. "§ 3005. False representations; . . .
    (a) Upon evidence satisfactory to the Postal Service that any person is engaged in conducting a scheme or device for obtaining money or property through the mail by means of false representations, or is engaged in conducting a lottery, gift enterprise, or scheme for the distribution of money or of real or personal property, by lottery, chance, or drawing of any kind, the Postal Service may issue an order which—

(1) directs the postmaster of the post office at which mail arrives, addressed to such a person or to his representative, to return such mail to the sender appropriately marked as in violation of this section, if the person, or his representative, is first notified and given reasonable opportunity to be present at the receiving post office to survey the mail before the postmaster returns the mail to the sender; . . . . ."

Now, my husband has started to drink again. Please rush me this wonderful medicine. God Bless You.' Mrs. N. K.—Sidney, N.S. Canada DO NOT WAIT. ORDER SOBERIN AIDS NOW! GUARANTEED or MONEY Back. Pay postman $10.00 plus c. o. d. & postage or Save $1.20 in C.O.D. & postage by sending $10.00 with order.

SOBERIN AIDS CO. DEPT MR46,

P.O. Box 405, Montvale, N.J. 07645"

The Postal Service complaint charged that the advertisement and the promotional matter that was sent to a purchaser with the product contained six false material representations. A hearing was held over a two-day period before an administrative law judge, at which plaintiff was represented by counsel and offered its defense. Upon the conclusion of the hearing the administrative law judge sustained the Postal Service charges as to three of the six alleged false representations. He found that the advertisement contained false material representations that Soberin Aids (1) may be used safely; (2) helps promote an aversion to all alcoholic drinks; and (3) is part of a medically recognized method for treating alcoholics over long periods. Upon appeal the judicial officer of the Postal Service upheld the decision of the administrative law judge only as to items 1 and 2 and sustained plaintiff's exception to item 3; accordingly, an appropriate mail stop order was issued.[2] Thereupon plaintiff commenced this action seeking judicial review pursuant to the Administrative Procedure Act[3] and a permanent injunc-

tion against the enforcement of the mail stop order. The matter is now before the court on plaintiff's motion for summary judgment. The parties are in agreement that there are no triable issues of fact and that upon the record the matter is ripe for summary judgment.

■ Although plaintiff during the course of the administrative proceedings raised various substantive and procedural issues in resisting the Postal Service charges, it limits its appeal in this court to an attack upon the two administrative findings that plaintiff falsely represented Soberin Aids may be used safely and that it helps promote an aversion to all alcoholic drinks. It contends that these determinations of false material representations are not supported by substantial evidence and are erroneous as a matter of law.

■ The Postal Service, "upon evidence satisfactory"[4] to it, is authorized to deny the use of the mails to those engaged in schemes or devices to obtain money through false representations. The power so vested in the Postal Service may not be interfered with by the courts unless it has exceeded its authority or is palpably wrong.[5] As this court has observed previously with respect to the power to review the agency determination:

"And even though the court, as the original trier of the facts, might have reached a different conclusion, it may not substitute its own judgment if there is substantial evidence to support the findings of fact made by the [Postal Service]. Thus the court's power to upset a finding by the [Post-

2. The order, as originally issued on October 1, 1973, directed the Postmasters at Montvale, New Jersey and Brooklyn, New York not to pay postal money orders to plaintiff or to deliver to plaintiff mail connected to the sale of Soberin Aids, and to return such mail to their senders bearing the stamp ". . . Order Issued Against Addressee for Violation of False Representation Law." However, on October 4, 1973, on motion of plaintiff and with the consent of the Postal Service, the mail stop order was

amended in that the two Postmasters were directed to retain all mail addressed to plaintiff, except such as might properly be claimed by plaintiff, until the conclusion of this suit.

3. 5 U.S.C. §§ 704, 706 (1970).

4. *See* note 1 *supra.*

5. Public Clearing House v. Coyne, 194 U.S. 497, 509, 24 S.Ct. 789, 48 L.Ed. 1092 (1904).

al Service] that the mails are being used in furtherance of a fraudulent scheme is restricted to those instances where there is no substantial evidence reasonably to support [its] conclusion." [6]

Against the background of these principles we consider plaintiff's attack upon the mail stop order.

The first inquiry is whether, as found by the administrative law judge and upheld on review by the judicial officer, plaintiff's advertisement represents that its product, Soberin Aids, "may be safely used." Plaintiff, in its challenge to this finding, argues that its advertisement does not "expressly claim its product is safe for all persons. In fact, plaintiff's advertisement does not mention safety at all." It complains that the agency decision on this issue was reached without evidence as to the meaning of the advertisement other than the advertisement itself; and finally, it contends that even if it be found that the advertisement carries with it a representation that the product may be used with safety, there is no substantial evidence in the record to support a finding that it is unsafe.

■ The fact that the advertisement does not contain a statement in haec verba that the product "may be safely used" of course does not mean there is no such representation. The Act has for its purpose the protection of the public —"to protect the unwary and unsuspecting as well as the knowledgeable and worldly-wise—those who are 'trusting as well as the suspicious.'" [7] Whether the advertisement contains a false representation within the meaning of the Act is to be determined by its impact upon

those to whom it is directed. As this court has ruled when a finding as to a representation is based upon the advertisement itself:

> "It is not each separate word or a clause here and there of an advertisement which determines its force, but the totality of its contents and the impression of the entire advertisement upon the general populace. . . . The ultimate impression upon the reader results not only from the total of what is stated but also from what is reasonably implied. . . ." [8]

The instant advertisement is directed to alcoholics and is headed in large block letters on a single line "DRUNK," below which is a subtitle in letters larger than the body of the advertisement, "Doctors Marvelous Medical Discovery," followed on the next line by "World Famous Since 1943." The body of the advertisement describes how thousands have been helped to break the drinking habit and that it is a doctor's recognized method for interrupting the drinking cycle for weeks, months and years; the virtues of the product are attested to by a letter from a wife who orders another bottle of Soberin Aids because her husband, after two years of bliss and happiness, started to drink again, and winds up "God Bless You." There also appears in the middle of the advertisement in block letters the statement "HOME METHOD GUARANTEED PURE," which suggests it can be used without medical advice or supervision. Considering that the advertisement is directed to alcoholics and members of their families, and viewing its contents in totality, the administrative finding that it represents the product may be safely used is fully

6. Vibra Brush Corp. v. Schaffer, 152 F.Supp. 461, 463–464 (S.D.N.Y.1957), order vacated on other grounds, 256 F.2d 681 (2d Cir. 1958). *See also* Leach v. Carlile, 258 U.S. 138, 139–140, 42 S.Ct. 227, 66 L.Ed. 511 (1922) ; National Conference on Legalizing Lotteries, Inc. v. Farley, 68 App.D.C. 319, 96 F.2d 861, 862, cert. denied, 305 U.S. 624, 59 S.Ct. 85, 83 L.Ed. 399 (1938) ; Gottlieb

v. Schaffer, 141 F.Supp. 7, 14–15 (S.D.N.Y. 1956).

7. Gottlieb v. Schaffer, 141 F.Supp. 7, 16 (S. D.N.Y.1956).

8. Vibra Brush Corp. v. Schaffer, 152 F.Supp. 461, 465 (S.D.N.Y.1957), order vacated on other grounds, 256 F.2d 681 (2d Cir. 1958).

warranted.[9] To find otherwise one must be blind to reality. The thrust of the advertisement, directed as it was to alcoholics, with its emphasis that it was a "Doctor's Marvelous Medical Discovery" and a "Doctor's recognized method for interrupting the drinking cycle," carried with it a representation that plaintiff's product, to be ingested internally, could be used without unexpected or untoward hazards to health.

The issue next to be considered is whether the administrative finding that the representation is materially false is supported by substantial evidence.[10] Soberin Aids, as already noted, consists of syrup of ipecac. It is intended to be self-administered by the alcoholic or surreptitiously by a member of his family, and without medical supervision. At the hearing before the administrative law judge, the Postal Service called as its witness Dr. Larry Staker, an internist who had special experience with alcoholics, their treatment and their problems. The plaintiff relied upon Kenneth F. Lampe, a Ph.D. in pharmacology and a Professor of Pharmacology at the School of Medicine at the University of Miami, Florida. The latter disclaimed expertise on the medical treatment of alcoholics; the administrative law judge accepted his testimony with respect to the chemical and pharmacological effects of substances taken into the body.

Dr. Staker testified that ipecac is an emetic that induces nausea and vomiting; that the reason for this effect is that it contains the alkaloids cephalin and emetine; and that emetine is a major agent for stimulating vomiting.[11]

Staker testified that emetine is a very toxic agent and that the use of plaintiff's product as directed would produce violent vomiting, and with its accompanying retching would produce severe stress and strain upon the body of the person who is vomiting. He further testified that while its use might induce a person to refrain from the use of alcoholic beverages, it would be temporary, depending upon the condition of the alcoholic; that if he was near unconsciousness when he received the medication, he might resume drinking the next day. Significantly, he testified that in his opinion a person should not administer the drug to himself without medical supervision; that its administration by nonmedical personnel would not be safe; that it should not be administered to a person who is intoxicated or has been drinking immediately before its administration. Dr. Staker emphasized that the incidence of heart disease, ulcers, kidney disease, cirrhosis of the liver, active tuberculosis and other diseases was higher in the alcoholic population than in the general population, and that the use of ipecac or plaintiff's product was contraindicated for persons with those conditions. He gave specific examples of untoward results or serious consequences which could follow its use by such persons. In the case of those with advanced tuberculosis the use of ipecac could be fatal; if a man vomits while slipping into unconsciousness, he may aspirate the contents of his stomach and develop pneumonia. He was of the opinion that under medically supervised conditions, which include supportive alco-

9. *Cf.* Donaldson v. Read Magazine, Inc., 333 U.S. 178, 68 S.Ct. 591, 92 L.Ed. 628 (1948); P. Lorillard Co. v. FTC, 186 F.2d 52 (4th Cir. 1950); Vibra Brush Corp. v. Schaffer, 152 F.Supp. 461 (S.D.N.Y.1957), order vacated on other grounds, 256 F.2d 681 (2d Cir. 1958); Gottlieb v. Schaffer, 141 F. Supp. 7 (S.D.N.Y.1956).

10. *See* Leach v. Carlile, 258 U.S. 138, 139–140, 42 S.Ct. 227, 66 L.Ed. 511 (1922); Stein's v. Pilling, 256 F.Supp. 238, 243 (D. N.J.1966), aff'd, 379 F.2d 554 (3d Cir. 1967); Vibra Brush Corp. v. Schaffer, 152 F.Supp. 461, 467 (S.D.N.Y.1957), order va-

cated on other grounds, 256 F.2d 681 (2d Cir. 1958).

11. The testimony at the hearing distinguished syrup of ipecac from two other related substances. Emetine is the pure alkaloid chemical that is the prime emesis-inducing agent in ipecac. Fluid extract of ipecac is a mixture of alkaloids, including emetine, derived from the Brazil root, or ipecac plant; it is no longer a stocked pharmaceutical item. Syrup of ipecac is, like the fluid extract, a mixture, but it is much less concentrated than the latter. Hearing Transcript at pp. 85–87, 162–63.

holic rehabilitation principles and therapy, ipecac has a place in the induction of an aversion to the use of alcohol, but that the unsupervised use of ipecac would not be effective in the treatment of alcoholism.

The plaintiff's expert, Dr. Lampe, while differing from plaintiff's expert on some matters, was in substantial agreement as to others—indeed there was little conflict of substance between them. Dr. Lampe testified that the use of syrup of ipecac to promote aversion is medically recognized; that a tablespoon of syrup of ipecac can produce nausea or vomiting or both; but that this would be moderate rather than violent vomiting, thus taking issue with Dr. Staker on this subject. The pharmacologist, based on the instructions contained in the information sheet which was mailed with plaintiff's product to a purchaser, was of the opinion that its use in accordance with its directions was safe; however, he was unclear as to whether medical supervision is preferable. He acknowledged that vomiting puts a strain upon a person with heart disease, ulcers and other conditions, and depending upon the degree of the affliction would be hazardous to such persons—indeed, in the instance of thoracic aneurism vomiting could result in a rupture causing death. He also testified that alcoholics had a higher incidence of ulcers than did the general population, but was without information that they had a higher incidence of coronary disease. The administrative law officer found that the taking of plaintiff's product, without medical supervision, presented an appreciable medical risk. He accepted the substance of the testimony of the Postal Service's witness, which as noted in some measure was concurred in by the plaintiff's witness.

Plaintiff challenges acceptance of the testimony of the Postal Service's medical expert, but upon a review of the testimony it cannot be said that the administrative law judge's acceptance of it was erroneous. The evaluation of the testimony of the medical experts based upon their experience, their knowledge of the subject matter as to which opinions were offered, and their demeanor, was for the trier of the fact.[12] Indeed, a reading of the record leaves no room to doubt there was substantial evidence to support the finding that plaintiff's representation that its product could be used safely was false. Soberin Aids is advertised as a "home method" that need not be used under medical supervision. Dr. Staker's testimony that the product could not be used safely without medical supervision was persuasive and in some measure was corroborated by Dr. Lampe. A most compelling case was established that its use by persons with certain diseases, the incidences of which are higher among alcoholics than among the population in general, would be hazardous, if not fatal, depending upon the violence of the vomiting induced by plaintiff's product. As already stated, plaintiff's advertisement implicitly represented that it could be used safely. Accordingly, if as testified to by Dr. Staker, whose testimony was accepted by the administrative officer, plaintiff's product could present an appreciable medical risk when used by individuals prone to certain conditions—conditions that exist in a significant portion of the population at which the advertisement is directed—and if the product should be taken only under medical supervision to assure that it will not be hazardous to such persons, the representation that it can be used safely is materially false.[13] In sum, the administrative finding that

12. WEBR, Inc. v. FCC, 136 U.S.App.D.C. 316, 420 F.2d 158, 162–163; Coscia v. Willard, 257 F.2d 105, 107 (2d Cir.), cert. denied, 358 U.S. 885, 79 S.Ct. 123, 3 L.Ed.2d 113 (1958); Benton v. FTC, 130 F.2d 254 (2d Cir. 1942); O'kon v. Roland, 247 F.Supp. 743, 747 (S.D.N.Y.1965).

13. The materiality of plaintiff's false representation of the safety of its product is emphasized by its omission to state in the advertisement the essential ingredient of the product and that its effect is to induce nausea and vomiting. Thus, potential users are kept in the dark as to the contents of what

the plaintiff's advertisement represented that Soberin Aids could be used safely and that this false statement is material is supported by substantial evidence.

While this ruling is sufficient to uphold the mail stop order, it is desirable to consider plaintiff's challenge to the second finding, which also is the basis for the Postal Service order, to wit, that the advertisement falsely represented that Soberin Aids helps promote an aversion to all alcoholic products. The administrative officer found that the advertisement by implication represented that the user of plaintiff's product "would be successful in overcoming his desire for all kinds of beverages of an alcoholic nature," but that the proof established ". . . taking the product as directed produces an aversion to the particular type of alcoholic beverage with which it is taken." First, plaintiff attacks the finding that the advertisement carries the "implication" as found by the administrative agency and contends that the implication is the opposite, since the advertisement states the product may be used secretly in "Whiskey, Wine, Beer, Gin, etc." However, plaintiff disregards the previous sentence in the advertisement, which reads "This Doctor's Medical Discovery helps promote an Aversion (dislike) to *all* alcoholic drinks," (emphasis supplied) and that portion of the advertisement which states the product helps break the drinking cycle. When the statements are considered in totality, the finding that the advertisement represents plaintiff's product helps promote an aversion to all alcoholic drinks was fully justified.

Second, as to the falsity of the representation, the evidence was abundant that syrup of ipecac would at the very best create a specific aversion to a particular type of alcoholic beverage with which it is taken. Dr. Staker so testi-

fied and was emphatic that to achieve aversion to alcohol of all types, hard liquor, beer or wine, an alcoholic would have to be administered ipecac with each —in sum, that the use of plaintiff's product would only result in an aversion to the specific form of alcohol a person was then drinking. Upon this evidence, since the taking of the product with one form of alcohol is not sufficient to create an aversion to all forms of alcohol, this representation is false and materially so. Dr. Staker's testimony was persuasive—indeed it was not negatived by the testimony of plaintiff's expert—and there was substantial evidence upon which the administrative finding was predicated.

Plaintiff's motion for summary judgment in its favor is denied and judgment is directed in favor of the defendant.[14]

they are ordering and are prevented from deciding before purchasing the product whether it provides a type of treatment that they wish to use, and whether its effects could be hazardous to them, depending upon their physical condition or particular ailments. A purchaser of plaintiff's product learns for the first time its ingredient and

the nature of the treatment after he has parted with his money and received the product.

14. *See* Factora v. District Director, 292 F. Supp. 518, 521 (C.D.Cal.1968) ; Walters v. Dunlap, 250 F.Supp. 76, 81 (W.D.Pa.), aff'd, 368 F.2d 118 (3d Cir. 1966).