**UNIQUE IDEAS, INC. and Ernest Tucker, a/k/a Ernie Tucker, Plaintiffs,**

v.

**UNITED STATES POSTAL SERVICE et al., Defendants.**

**No. 75 Civ. 1789.**

United States District Court, S. D. New York.

July 26, 1976.

8

Koenig, Ratner & Mott, New York City, for plaintiffs; Raphael P. Koenig, New York City, of counsel.

Thomas J. Cahill, U. S. Atty., S. D. N. Y., New York City, for defendants; William G. Ballaine, New York City, of counsel.

## OPINION

ROBERT J. WARD, District Judge.

Plaintiffs Unique Ideas, Inc. and Ernest Tucker a/k/a Ernie Tucker seek to review the administrative decision of the judicial officer of the United States Postal Service (hereinafter "judicial officer") determining plaintiffs to be in violation of 39 U.S.C. § 3005,[1] and to enjoin enforcement of a stop-mail order issued pursuant to that section. The stop-mail order denies mail privileges to any materials connected with plaintiffs' "proven easy money method," a "get rich quick" scheme advertised for sale by plaintiffs in publications of general circulation and by direct-mail circulars. The advertisement solicited $10.00 for a booklet describing plaintiffs' "method," which in

turn solicited additional moneys for materials with which to "get rich quick."

### I. The Scheme

The scheme worked as follows: Plaintiffs had at their disposal novelty mink jewelry, e. g., necklaces, bracelets and key rings, and later mink flowers also. Members of the public who sent $10.00 in response to plaintiffs' initial advertisement (hereinafter "contacts") received a booklet describing the items and expounding upon the vast amounts of money that could be made. In the booklet, plaintiffs offered the contact an opportunity to invest and profit: for fees ranging from $63.00 to $220.00, the contact would receive a list of from 500 to 5000 "guaranteed mail order buyers" to whom he or she could mail brochures and order forms for the mink jewelry or flowers. When the contact received orders, he or she was to retain one/half the payment and send plaintiffs the order and the other half of the payment. Plaintiffs would then mail the merchandise directly to the purchaser.

### II. Procedural History

On February 10, 1975, the Postal Service filed an administrative complaint (hereinafter "the complaint") alleging that plaintiffs were engaged in a scheme or device to obtain money through the mails by means of false representations, a violation of 39 U.S.C. § 3005. The complaint further alleged that plaintiffs, by means of the advertisement and booklet, falsely represented to contacts that the Ernie Tucker Money Making Method was a tested and proven

---

1. 39 U.S.C. § 3005. False representations; lotteries

(a) Upon evidence satisfactory to the Postal Service that any person is engaged in conducting a scheme or device for obtaining money or property through the mail by means of false representations, or is engaged in conducting a lottery, gift enterprise, or scheme for the distribution of money or of real or personal property, by lottery, chance, or drawing of any kind, the Postal Service may issue an order which—

(1) directs the postmaster of the post office at which mail arrives, addressed to such a person or to his representative, to return

such mail to the sender appropriately marked as in violation of this section, if the person, or his representative, is first notified and given reasonable opportunity to be present at the receiving post office to survey the mail before the postmaster returns the mail to the sender; and

(2) forbids the payment by a postmaster to the person or his representative of any money order or postal note drawn to the order of either and provides for the return to the remitter of the sum named in the money order or postal note.

scheme by which they would "get rich fast" merely by following the procedure outlined above. Additionally, the complaint charged that plaintiffs falsely claimed that the "Ernie Tucker Money Making Method" earned Mr. Tucker "$35,000 in just one day at home in bed with the flu" and "thousands weekly." All of the allegations were denied.

The Postal Service filed a related complaint in this Court on February 14, 1975 seeking a preliminary injunction pursuant to 39 U.S.C. § 3007 and Rule 65(a), Fed.R. Civ.P., and ordering detention of plaintiffs' incoming mail pending the determination of the administrative proceeding. An injunction was issued on March 10, 1975.

In the meantime, extensive hearings were held before the judicial officer. On March 11, 1975, the judicial officer found violations of 39 U.S.C. § 3005 as alleged in the administrative complaint and issued the stop-mail order on review here.

Specifically, the judicial officer found that plaintiffs, in their advertisement and booklet, falsely represented to contacts that the "Ernie Tucker Money Making Method" is a "certified, notarized and documented" "proven easy money method" with "no major risks," and that contacts would "get rich quick" by purchasing from plaintiffs lists of "guaranteed mail order buyers," and "proven, big money advertising circulars" which should result in "orders averaging $10.00–$40.00 per order from at least 5–10% of such persons [on the lists]," those projections constituting "strictly honest estimates based on actual test mailings. . . ."

The judicial officer also found that plaintiffs falsely represented that the "method" had earned Mr. Tucker "$35,000 in just one day at home in bed with the flu" and "thousands weekly."

Plaintiffs challenge the judicial officer's findings and seek summary judgment, alleging that the stop-mail order is improper, because there is not substantial evidence in the record to support the administrative

determination that the representations and promises attributed to plaintiffs were in fact made, or that, if made, were false. Defendants have cross-moved for summary judgment, contending that there is sufficient evidence to support the findings of the judicial officer.[2] Since the only issue is one of law, the parties' cross-motions for summary judgment are properly before this Court. Rule 56, Fed.R.Civ.P.

### III. *Judicial Review*

■ The stop-mail order was issued pursuant to 39 U.S.C. § 3005, which authorizes the Postal Service to take such action "[u]pon evidence satisfactory to [it]. . ." While this Court has power of review over administrative decisions of the Postal Service, 5 U.S.C. §§ 704, 706 (1970), the inquiry is a limited one. In *N. Van Dyne Advertising Agency, Inc. v. United States Postal Service*, 371 F.Supp. 1373, 1375–76 (S.D.N.Y.1974), the court stated:

> "The power so vested [by 39 U.S.C. § 3005] in the Postal Service may not be interfered with by the courts unless it has exceeded its authority or is palpably wrong", [citing *Public Clearing House v. Coyne*, 194 U.S. 497, 509, 24 S.Ct. 789, 48 L.Ed. 1092 (1904)]

> \*   \*   \*   \*   \*   \*

> "And even though the court, as the original trier of the facts, might have reached a different conclusion, it may not substitute its own judgment if there is substantial evidence to support the findings of fact made by the [Postal Service]. Thus the court's power to upset a finding by the [Postal Service] that the mails are being used in furtherance of a fraudulent scheme is restricted to those instances where there is no substantial evidence reasonably to support [its] conclusion", quoting *Vibra Brush Corp. v. Schaffer*, 152 F.Supp. 461, 463–64 (S.D.N.Y.1957), *order vacated on other grounds*, 256 F.2d 681 (2d Cir. 1958) (other cites omitted). *See also, Consolo v. Federal Maritime Commission*, 383 U.S. 607, 620, 86 S.Ct. 1018,

---

**2.** The Service has also filed a related motion, requesting this Court to dissolve the prelimi-

nary injunction issued March 10, 1975, so that the stop-mail order may go into effect.

1026, 16 L.Ed.2d 131 (1966) (". . . the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."); *Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938) ("Substantial evidence . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."), quoted in *Louis Dreyfus Corp. v. United States*, 401 F.Supp. 919, 924 (S.D.N.Y.1975). This Court must view plaintiffs' challenge to the judicial officer's decision and order according to the principles articulated above.

Contacts who had purchased plaintiffs' money-making method and materials testified at the administrative hearing, as did Mrs. Gail Tucker, wife of Ernie Tucker, and an officer of Unique Ideas, Inc., and Mr. McLean, an expert witness. Perhaps the most important evidence introduced at the hearing were the "Ernie Tucker Money-Making Method" advertisement and booklet themselves.

In plaintiffs' advertisement, which also comprises page 2 of the booklet, one finds the language, "tested proven easy money method," "get rich quick," and "no risk," upon which the judicial officer based his decision and order.

Additional representations allegedly made by plaintiffs: a "certified, notarized and documented method," "guaranteed mail order buyers," and "strictly honest estimates . . ." are found, verbatim, at pages 5, 9 and 12, and 7, respectively, of plaintiffs' booklet. The "strictly honest estimate" language is reproduced in another of plaintiffs' brochures.

■ Regarding plaintiffs' prediction that contacts could expect a return on brochure mailings of 5–10% and orders averaging $10.00–$40.00, plaintiffs characterized their statements as "speculative projection on a business venture." However, after viewing the totality of the material, *i. e.*, the specific predictions quoted from the booklets and the pervasive hard-sell approach of the entire booklet, the Court concludes that the

more definitive "will result" implication imputed to plaintiffs is accurate. The assertion by plaintiffs that Mr. Tucker made "$35,000 in just one day at home in bed with the flu" and continues to make "thousands . . . every week" is prominently displayed in the full-page advertisement and is obviously meant to draw the attention of readers. The claim is repeated at page 11 of the booklet. While the quoted language does not explicitly say that contacts are being sold the same method used by Mr. Tucker, it is a settled precept of law that advertisements are to be interpreted "in the light of the effect [they] would most probably produce on ordinary minds." *Donaldson, Postmaster General v. Read Magazine, Inc.*, 333 U.S. 178, 189, 68 S.Ct. 591, 597, 92 L.Ed. 628 (1948), followed in *American Image Corporation v. United States Postal Service*, 370 F.Supp. 964, 966 (S.D.N.Y.), *aff'd*, 503 F.2d 1397 (2d Cir. 1974). Thus, it is reasonable to conclude that the statement quoted above induced contacts to believe that the method offered to them was precisely the one used so successfully by Mr. Tucker.

■ Considering the advertisement and the booklet together with the ultimate impression upon the reader ". . . not only from the total of what is stated but also from what is reasonably implied", the Court holds that there is substantial evidence to support the judicial officer's finding that plaintiffs in fact made the representations attributed to them in the complaint. See *N. Van Dyne Advertising Agency, Inc. v. United States Postal Service, supra* at 1376, quoting *Vibra Brush Corp. v. Schaffer, supra*. See also, *Donaldson, Postmaster General v. Read Magazine, Inc., supra*, 333 U.S. at 188–89, 68 S.Ct. 591.

However, in order to uphold the judicial officer's determination that plaintiffs violated 39 U.S.C. § 3005, and so are subject to the stop-mail order, the Court must also find substantial evidence that the representations made by plaintiffs were false.

At the administrative hearings, testimony of purchasers of the Ernie Tucker Money

Making Method was received, in person and by stipulation, to the effect that 39 contacts paid plaintiffs a total of $4,631.00 for 47,500 "mailers," i. e., selling material and names of guaranteed mail order buyers. In addition, they spent almost $3,000.00 for postage, mailing over 36.000 "mailers." Thus, in excess of $7,500.00 was spent attempting to implement the Ernie Tucker Money Making Method. However, from the total mailing of over 36,000 "mailers" only three merchandise orders, aggregating $62.75, were received. Pursuant to the sales agreement, half was sent to plaintiffs. Thus, on an aggregate investment by contacts of over $7,500.00, the total sum earned was $31.37, and the percentage of orders received to mailers sent was .0001, totally refuting plaintiffs' claims that their method is a "quick," "easy," "no risk" road to wealth.

In addition, an examination of plaintiffs' mailing lists reveals that only 25% of the 13,000,000 names plaintiffs were distributing had previously purchased jewelry items through the mail. While the language of plaintiffs' advertising merely says, "guaranteed mail order buyers," not "guaranteed jewelry mail order buyers," the implication from the total presentation is that the people on the "guaranteed" lists had bought items similar to those offered by plaintiffs, which is false and misleading.

Also pertinent was the testimony of the expert witness, Mr. McLean, who testified to the low probability, in his words "absolutely impossible," and "infinitesimal," of the predicted returns of 5% and 10% on the merchandise brochures sold to contacts. While plaintiffs challenged Mr. McLean's testimony on cross-examination, they did not offer contrary expert testimony or evidence.

Mrs. Gail Tucker testified to the veracity of plaintiffs' claim that Ernie Tucker earned "$35,000 in just one day at home in bed with the flu" and "thousands weekly." However, Mr. Tucker earned that money not through direct mail advertisements of mink jewelry and flowers, as implied in the advertisements, but through the sale of cassettes, radios, albums and eight track tapes, which had been advertised for sale on the radio.

With respect to plaintiffs' claim that the potential income projections were "strictly honest estimates based on actual test mailings," it must be noted that intent to deceive is not an element of 39 U.S.C. § 3005, *Lynch v. Blount*, 330 F.Supp. 689, 692–93 (S.D.N.Y.1971), aff'd, 404 U.S. 1007, 92 S.Ct. 673, 30 L.Ed.2d 656 (1972), and the word "honest" is not evaluated in that sense. Rather, the total phrase is reasonably interpreted as speaking to the reliability of the results.

The expert witness, Mr. McLean, testified that because of the actual poor response to plaintiffs' mail lists, he could not believe that any test run could have predicted return rates of 5 and 10%. At the least, such a test run would have been unreliable.

■ Considering the evidence discussed above and in light of the entire record, the Court finds substantial evidence to support the judicial officer's finding that the representations made by plaintiffs in their advertisement and booklet are false and so in violation of 39 U.S.C. § 3005.

Accordingly, plaintiffs' motion for summary judgment is denied, and defendants' cross-motion is granted. In addition, the related motion to dissolve the preliminary injunction issued by this Court on March 10, 1975, 75 Civ. 701, is granted so that the judicial officer's stop-mail order may go into effect.

Settle order on notice.