**AMERICAN TESTING INSTITUTE,**
Plaintiff,

v.

**U.S. POSTAL SERVICE, Defendant.**

Civ. A. No. 83–2272.

United States District Court,
District of Columbia.

Jan. 26, 1984.

Edward J. Carnot, Rockville, Md., for plaintiff.

Patricia Daniells Carter, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM OPINION

JUNE L. GREEN, District Judge.

This action is before the Court on the parties' cross-motions for summary judgment. For the reasons stated below, the Court grants defendant's motion for summary judgment and dismisses this action.

Plaintiff, American Testing Institute, seeks review of the administrative decision of the Judicial Officer of the United States Postal Service ("Postal Service") who concluded that plaintiff was in violation of the postal lottery statute which prohibits the operation of a lottery. 39 U.S.C. § 3005. Plaintiff also requests that the stop mail order issued on July 6, 1983, pursuant to that section, be dissolved. The Court has subject matter jurisdiction over this case pursuant to 39 U.S.C. § 409.

### I. The Scheme

American Testing holds itself out as an organization that sends through the mails survey forms, requesting information about the recipients' television viewing habits. Recipients are asked to answer eight simple multiple-choice questions by checking boxes on a "Test Response Form." In the mailing, American Testing announces that any recipient who completes the "Test Response Form" will be awarded one of twenty "special" gifts listed in the mailing. Administrative Record at 33, 35. ("A.R.").

All but one in every ten thousand recipients of the solicitation who respond to the mailing receive gift No. 12. Gift No. 12 is a lifetime membership to a national film club. The prize is described in the material as:

UNLIMITED KODAK FILM FOR THE REST OF YOUR LIFE ... *Guaranteed Free Life Membership* in a National Film Club provides free color film, any size, any exposure, for each roll developed ... THIS GIFT INCLUDES UP TO 40% DISCOUNT ON DEVELOPING $720.00

*Id.* (Emphasis in original). The solicitation letter also requests remittance of $14.80 to help cover the cost of handling, postage, and administration of the testing.

American Testing has used two types of solicitation letters. The first of these letters includes the following instructions:

*FOLLOW THESE INSTRUCTIONS CAREFULLY:*

A. Answer all questions on the TEST RESPONSE FORM.

B. Place the completed TEST RESPONSE FORM in the enclosed postage-paid envelope. Include your check or money order for $14.80. This amount covers the cost of shipping, handling, postage, printing and administration of this testing procedure.

C. You are required to mail the completed TEST RESPONSE FORM within ten days from the time you receive it. *THERE IS ABSOLUTELY NO PURCHASE OF PRODUCT OR PAYMENT OF SERVICE REQUIRED OR ASKED OF YOU IN ORDER TO RECEIVE YOUR GIFT.* Each gift itself is *FREE OF CHARGE.*

D. Within two-three weeks after we receive your completed TEST RESPONSE FORM, we will send your gift *completely prepaid.*

NOTE: Every participant who completes the TEST RESPONSE FORM automatically receives ONE gift from the twenty listed above. Highest valued gifts are distributed less frequently than lower valued gifts.

A.R. at 33. (Emphasis in original).

American Testing's more recent letter contains the above instructions with the exception of paragraph B, which was changed to read as follows:

B. Place the completed TEST RESPONSE FORM in the enclosed postage-paid envelope. To help defray the cost of shipping, handling, postage, printing, and administration of this testing procedure, include your check or money order for $14.80.

A.R. at 35.

In addition to the above, the following instructions appear on the back of the "Test Response Form" in the first of the two letters:

Make check or money order payable to:
AMERICAN TESTING

___ CHECK ___ MONEY ORDER

ENCLOSED IS MY CHECK OR MONEY ORDER TO COVER SHIPPING, HANDLING, REGISTRATION, PROCESSING AND POSTAGE  $14.80

MAIL TO: AMERICAN TESTING INSTITUTE

A.R. at 34. this language was revised in the more recent letter to read as follows:

NOTE: All qualified participants automatically receive one of the 20 gifts shown in the enclosed letter.

Make check or money order payable to:
AMERICAN TESTING

ENCLOSED IS MY
___ CHECK ___ MONEY ORDER
FOR $14.80 TO COVER SHIPPING, HANDLING, PROCESSING AND POSTAGE.
___ NOT ENCLOSED BUT SEND A GIFT ANYWAY.

A.R. at 36.

## II. The Administrative History

On October 27, 1982, the Consumer Protection Division of the Law Department of the Postal Service filed a complaint against the plaintiff, American Testing Institute ("American Testing"), to enforce the postal lottery statute, 39 U.S.C. § 3005. Section 3005 provides in pertinent part:

Upon evidence satisfactory to the Postal Service that any person ... is engaged in conducting a lottery, gift enterprise, or scheme for the distribution of money or of real personal property, by lottery, chance, or drawing of any kind, the Postal Service may issue an order which ... directs the postmaster of the post office at which mail arrives, addressed to such

a person or to his representative, to return such mail to the sender appropriately marked as in violation of this section
. . . .

39 U.S.C. § 3005.

The complaint alleged that American Testing was engaged in a lottery scheme by using direct mail solicitations urging recipients to complete a "Test Response Form" and mail it with a payment of $14.80. The complaint further alleged that American Testing offered those who completed the test response form and remitted, at their option, $14.80 the opportunity to win one of the valuable prizes listed in the solicitation.

On November 29, 1982, the parties, represented by counsel, presented evidence at a hearing before an Administrative Law Judge ("ALJ") to determine whether American Testing was in violation of section 3005. At that hearing, the parties had the opportunity to be heard, to argue the weight of the evidence presented, and to present, examine, and cross-examine witnesses. The only witness that testified at the hearing was Lee M. Small, an employee of American Testing Institute. During the course of the hearing, American Testing conceded two of the three necessary elements to have a lottery, prize and chance. The remaining element of consideration was the only factor at issue at the hearing.

On December 20, 1982, the ALJ issued an Initial Decision with proposed findings of fact and conclusions of law. In those findings of fact, the ALJ noted, *inter alia,* that:

At least 60% of the people responding to Respondent's letter considered the offer to require the remittance of $14.80 before they would be eligible to receive one of the 20 "gifts" . . . .

Every person who sent Respondent a completed test form received one of the twenty "gifts" regardless of whether they remitted the $14.80 or not. Almost every person responding received gift No. 12, the photo club membership. Only one person in every 10,000 received one of the other, more valuable, prizes.

A person who remitted $14.80 with the completed test response form received nothing more than a person who merely completed the form and paid nothing. Both of Respondent's letters are artfully worded to lead a person of ordinary intelligence to believe that the remittance of $14.80 is a prerequisite to becoming eligible to win one of the 20 prizes.

A.R. at 42–43.

After considering these facts and all the evidence presented to him, the ALJ found that the plaintiff's activities constituted a violation of 39 U.S.C. § 3005. Using the ordinary man standard he determined that the necessary elements of prize, chance, and consideration were present in plaintiff's solicitation to constitute a lottery within the meaning of the statute. Particularly, the ALJ found that after reviewing the evidence as a whole it was reasonable for a participant in the American Testing survey, who received the first letter, to conclude that he would not receive a prize unless he followed the instructions and remitted the money requested. As to the second letter, the ALJ concluded that that version would lead an ordinary person to believe that he would receive a small inexpensive gift if he did not include $14.80. He concluded that in order to be "qualified" for the big gifts, the recipient would reason that the money requested must be submitted to cover the shipping and handling of the larger, more expensive gifts.

American Testing appealed this initial decision pursuant to 39 C.F.R. § 952.25. It also began conducting business with the same solicitations, but seeking responses under a new name, "Gift Redemption Center," located at a new address. The Postal Service then moved to amend its original complaint to include both the American Testing Institute and "Gift Redemption Center" in the action. Plaintiff opposed this motion and requested an oral hearing on the matter. The Judicial Officer granted the Postal Service's motion to amend its administrative complaint and denied American Testing's motion for an evidentiary hearing.

The Postal Service, pursuant to 39 U.S.C. § 3007, submitted an application to the United States District Court in the Southern District of Florida for a temporary restraining order and preliminary injunction to detain all correspondence that responded to plaintiff's solicitation until the completion of all administrative proceedings on the matter. On January 20, 1983, the Honorable William M. Hoeveler issued a preliminary injunction directing the Postal Service to detain American Testing's incoming mail that related to the alleged lottery solicitation. *United States Postal Service v. American Testing Institute*, 83–010–Civ–WMH (S.D.Fla.1983). The court found that there was sufficient "probable cause" to believe that American Testing was violating 39 U.S.C. § 3005. *Id.*

On July 6, 1983, the Judicial Officer for the Postal Service issued the final agency decision finding that plaintiff was, in fact, engaged in a lottery enterprise under section 3005. Based on that decision he issued an order to the Miami Postmaster to withhold from delivery and return all mail that was related to plaintiff's lottery solicitation.

The Judicial Officer, in his *de novo* review of the initial decision, determined that the ALJ's conclusions were correct. He agreed with the conclusion that an ordinary participant, receiving American Testing's survey in its entirety, would conclude that in order to be equally eligible to win one of the prizes offered, that person must remit $14.80. The Judicial Officer further determined that the language of both solicitations, coupled with a 60 percent response rate with money enclosed ("remittance response rate") in the first solicitation, supported the conclusion that an ordinary reader would interpret American Testing's solicitation to require payment of $14.80 in order to be equally eligible to win a valuable prize.

Plaintiff filed suit August 5, 1983, requesting review of the Postal Service's final agency decision. Simultaneously with the filing of the complaint, plaintiff filed a motion for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. On September 15, 1983 the Court, after having heard argument, denied plaintiff's motion for a preliminary injunction.

### III. Conclusions of Law

American Testing has challenged the conclusions of both the ALJ and the Judicial Officer and seeks summary judgment in its favor. It argues that the findings of both the ALJ and the Judicial Officer cannot be supported by substantial evidence in the record. The Postal Service has also filed a motion for summary judgment, arguing that there was sufficient evidence to support the agency's conclusion that American Testing was conducting a lottery, in violation of section 3005. Because there are no *genuine* issues of material fact and the only issue that is before the Court is one of law, the parties' motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure are proper.

### A.

The Postal Service's stop-order was issued pursuant to section 3005, which provides that the Postal Service may issue such an order where it determines that a lottery enterprise is being conducted. This Court has the power to review such a determination by the Postal Service under chapter seven of the Administrative Procedures Act, 5 U.S.C. §§ 704 et seq., 706. It is important to note, however, that the Court's review of administrative determinations is a limited one. *See generally, Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). It is plain that "[t]he power ... vested in the Postal Service [by 39 U.S.C. § 3005] may not be interfered with by the courts unless it has exceeded its authority or is palpably wrong." *N. Van Dyne Advertising Agency, Inc. v. United States Postal Service*, 371 F.Supp. 1373, 1375 (S.D.N.Y.1974), *citing Public Clearinghouse v. Coyne*, 194 U.S. 497, 509, 24 S.Ct. 789, 793, 48 L.Ed. 1092 (1904); followed in *Unique Ideas, Inc. v. United States Postal Service*, 416 F.Supp. 1142, 1144 (S.D.N.Y.1976). Courts apply the substantial evidence test as the standard of review. Substantial evidence

has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938); followed in *Refrigerated Transport Co. v. I.C.C.*, 616 F.2d 748, 751 (5th Cir.1980) (per curiam).)

The Court in reviewing the Postal Service's final agency decision must therefore confine itself to determining whether, considering the record as a whole, there is substantial evidence to support the agency's findings of fact and whether errors of law have been committed. *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. at 490, 71 S.Ct. at 465; *Whirlpool Corp. v. Occupational Safety and Health Review Commission*, 645 F.2d 1096, 1101 (D.C.Cir. 1981). *See also Vibra Brush Corp. v. Schaffer*, 152 F.Supp. 461, 464 (S.D.N.Y. 1957), *order vacated on other grounds*, 256 F.2d 681 (2d Cir.1958) (court may only upset Postal Service's findings where there is no showing that the agency's decision is supported by substantial evidence.)

The Court finds that the Judicial Officer's decision is supported by substantial evidence. The Judicial Officer in his *de novo* review carefully examined the record, the transcript of the hearing before the ALJ, the evidence presented at the hearing, and the ALJ's initial decision. He concluded after looking at the whole record that the ALJ came to the correct decision.

### B.

American Testing has challenged the conclusions of the Judicial Officer as not being supported by substantial evidence. Plaintiff argues that the necessary element of consideration was not present to form the basis for a lottery. It first contends that the decision by the Judicial Officer that American Testing was conducting a lottery cannot be supported by the language of the solicitations. It argues that the letters clearly state that payment is not required and therefore the administrative officers could not conclude that considera-

tion was present and that plaintiff was conducting a lottery.

■ The Court believes that plaintiff's contention is without merit. Both the ALJ and the Judicial Officer determined that each solicitation, read in its entirety, would lead an ordinary person to believe that payment is required in order to receive a gift. The inconsistency in the language of both solicitations does not lead an ordinary person to conclude that money is not required in order to have a chance to win one of the valuable prizes. Rather, the deliberate ambiguity in the wording of the solicitation compels an ordinary person to believe that if he or she wants an even chance at receiving a valuable gift, the remittance of $14.80 is necessary. The Court will not upset this determination by the ALJ and the Judicial Officer.

Plaintiff also contends that the administrative officers did not apply the proper law in determining whether American Testing was conducting a lottery. The Court is also not persuaded by this argument. The solicitations and other evidence were judged in their totality and upon the impression they would most likely create in the minds of those who received the solicitations. *E.g., Donaldson v. Read Magazine*, 333 U.S. 178, 185–89, 68 S.Ct. 591, 595–97, 92 L.Ed. 628 (1948). The administrative officers applied the ordinary person standard, "not with a lawyer's eye to 'fine spun distinctions' but with an eye to their over-all effect upon the average reader. *Donaldson v. Read*, (1948) 333 U.S. 178 [68 S.Ct. 591, 92 L.Ed. 628] . . . and cases cited." *American Image Corp. v. United States Postal Service*, 370 F.Supp. 964, 966 (S.D.N.Y.1974), *aff'd mem.*, 503 F.2d 1397 (2d Cir.1974). Under this standard, the Judicial Officer concluded that plaintiff was conducting a lottery in violation of section 3005. That finding is supported by substantial evidence on the record.

American Testing also claims that the ALJ and Judicial Officer relied on the 60 percent remittance response rate for the first mailing without considering countervailing evidence in the record. It argues

that the administrative officers failed to address the large number of requested and granted refunds. Specifically, plaintiff refers to the following testimony at the administrative hearing.

Q. The people who are complaining or want refunds, can you explain the nature of their complaints or why they want refunds?

A. I would say—

Q. And the numbers, percentages?

A. Well, we have not had many, many complaints at all ....

What I do is, I process each of those letters and I indicate that they should be sent refunds.

Q. What percentage of the people are happy or unhappy, do you know, can you indicate that?

A. Well, from the volume of mailings—I guess it is possibly too early to say but from the volume of mailings that Mr. Krantz has been doing and the small amount of complaints that American Testing has received, I think it is an overwhelming amount that seem to be quite happy. I would say well over 90 percent.

A.R. at 21–22. Plaintiff contends that this testimony indicates that up to 10 percent of the gift recipients requested and received refunds and that this percentage must be subtracted from the response remittance rate, relied on by the administrative officers, to indicate the true response remittance rate. American Testing argues that if the ALJ and the Judicial Officer had taken this testimony into account, the actual response remittance rate would only be 50 percent.

This argument is also without support. The testimony does not indicate that 10 percent of all those who *paid* money requested and received refunds. It merely demonstrates that "well over 90%" of all those who *participated* in plaintiff's "survey" were satisfied with the gift they received. That percentage includes both those who remitted the $14.80 and those who did not. The percentages that plaintiff refers to have little significance.

Further, it should be noted that simply because certain individuals demanded and received a refund after having remitted the $14.80 does not affect the total percentage of those who initially paid the money requested by American Testing. In determining whether plaintiff is violating section 3005, the focus is not on those individuals who paid money and did not request a refund, but it is on all those who initially responded to the solicitation and paid money, believing that such payment was required in order to receive a gift.

Finally, American Testing argues that the ALJ and the Judicial Officer misapplied the ordinary person standard by disregarding those individuals who mailed their response form without payment. It contends that the ALJ "dismissed from consideration all of the nonpaying respondents, saying they were 'more intelligent individuals.' He then applied the ordinary person standard to only the paying participants." Defendant's Motion for Summary Judgment at 2. Plaintiff also contends that the Judicial Officer failed to correct such a misapplication.

Plaintiff's characterization of the ALJ's conclusion is at best strained. This argument by plaintiff refers to the ALJ's response to American Testing's claim that prizes were given to persons who returned the survey without payment of $14.80. The ALJ noted correctly that "the fact that a group of more intelligent individuals may have correctly guessed that [American Testing] would send the prize even if the $14.80 was not remitted does not alter the status of those ordinary persons for whom consideration of $14.80 was required." A.R. at 47. Contrary to plaintiff's assertion, such a statement by the ALJ does not indicate a misapplication of the ordinary person test. As demonstrated above, both the Judicial Officer and the ALJ correctly applied the test for determining the existence of a lottery and carefully reviewed and considered *all* relevant evidence.

For the reasons stated above, the Court grants defendant's motion for summary judgment and dismisses this action.