**UNITED STATES POSTAL SERVICE, Plaintiff,**

v.

**ALLIED TREATMENT, INC., a/k/a Allied Treatment, a/k/a Allied Awards Center, a/k/a Allied, Defendant.**

**Civ. A. No. CA 3–90–0017–G.**

United States District Court,
N.D. Texas,
Dallas Division.

Feb. 8, 1990.

Linda Groves, Asst. U.S. Atty., Dallas, Tex., and Geoffrey A. Drucker, and Stacy M. Ludwig, Consumer Protection Div., Washington, D.C., for plaintiff.

Mark Frels, Denton & Guinan, Dallas, Tex., for defendant.

## MEMORANDUM ORDER

FISH, District Judge.

This case is before the court on the application of the United States Postal Service ("USPS") for preliminary injunctive relief.

For the reasons stated here, preliminary relief is granted.[1]

## I. *Factual Background*

Defendant Allied Treatment, Inc. ("Allied") is a Texas corporation which was incorporated on October 9, 1989, and which has its principal place of business in Dallas, Texas. Allied sends unsolicited letters by United States mail to out of state consumers which contain certificates captioned "Official Notification Certificate of Guarantee." The Postal Inspection Service has received 20 to 30 complaints from the recipients of this unsolicited mail. The Texas Council of Better Business Bureaus has received over 1,100 complaints and inquiries about Allied.

During the five day period from December 26, 1989 through December 30, 1989, Allied received an average of 440 pieces of mail per day. On January 3, 1990, a statutory administrative proceeding was begun in Washington, D.C. by the USPS to determine whether the business practices of Allied violate the provisions of 39 U.S.C. § 3005 as a lottery or scheme or device which obtains property or money through the mails by means of a false representation.

On January 5, 1990, the USPS applied to this court for a temporary restraining order and a preliminary injunction against Allied pending the outcome of the statutory administrative proceeding. On January 5, the court entered a temporary restraining order against Allied which directed, pursuant to 39 U.S.C. § 3007, detention of Allied's mail pending conclusion of the administrative proceeding. The temporary restraining order was extended for ten (10) days on January 22, 1990 and for an additional ten (10) days at the hearing held on February 2, 1990.

## II. *Analysis*

█ Section 3007 of 39 U.S.C. provides that a United States District Court shall, upon application of the USPS and upon a showing of probable cause to believe that section 3005 of 39 U.S.C. is being violated, enter a temporary restraining order and preliminary injunction. 39 U.S.C. § 3007. A finding of probable cause must be based on reasonably trustworthy information. *United States Postal Service v. Stimpson,* 515 F.Supp. 1149, 1150 (N.D.Fla.1981).

### A. False Representations

█ To obtain injunctive relief under section 3007 on grounds of false representations, the USPS must show that there is probable cause to believe that the defendant's scheme is reasonably calculated to deceive persons of ordinary prudence and comprehension. *United States v. Outpost Development Corporation,* 369 F.Supp. 399, 402 (C.D.Cal.), *affirmed,* 414 U.S. 1105, 94 S.Ct. 832, 38 L.Ed.2d 733 (1973). To determine whether an advertisement or solicitation makes a false or misleading representation, the court must consider the effect that the advertisement, taken as a whole, would produce on one with an ordinary and unsuspecting mind. A court must consider the implications of an advertisement because, if it is designed to deceive the reader, an advertisement "may be completely misleading" even if "every sentence separately considered is literally true." *Donaldson v. Read Magazine,* 333 U.S. 178, 188–89, 68 S.Ct. 591, 596–97, 92 L.Ed. 628 (1948). Taking an advertisement or solicitation as a whole means considering not only what it states literally, but also what it reasonably implies. *Unique Ideas, Inc. v. United States Postal Service,* 416 F.Supp. 1142, 1145 (S.D.N.Y.1976); *N. Van Dyne Advertising Agency, Inc. v. United States Postal Service,* 371 F.Supp. 1373, 1376 (S.D.N.Y.1974). A section 3007 injunction is only appropriate in situations "strongly suggestive of consumer fraud." *United States Postal Service v. Beamish,* 466 F.2d 804, 807 (3rd Cir.1972). An advertisement may be fraudulent even though "exceptionally acute and sophisticated readers might have been able by penetrating analysis to have deciphered [its] true

---

1. This memorandum order will constitute the court's findings of fact and conclusions of law, as required by Rule 52(a), F.R.Civ.P.

**740**

nature." *Donaldson*, 333 U.S. at 189, 68 S.Ct. at 597.

■ The court is of the opinion that the representations of Allied in its mail solicitation and subsequent telephone marketing convey a false impression to the ordinary, unsuspecting consumer. First, the certificate mailed to a consumer makes no mention that Allied's business is selling water purification units. The consumer who reads it will thus have no reason to suppose that he will be solicited to buy one of these units to receive his prize. Second, the consumer is led to believe in subsequent conversations with Allied's telephone marketers that he must buy a water purifier or send for a test kit (both of which cost money) before he can collect his prize. Only if pressed by the consumer is the telemarketer authorized to admit that the consumer may claim his prize without spending any money. Third, there is a lengthy disclaimer in fine print on back of Allied's certificate. According to that disclaimer, a consumer who participates in the $5,000 "shopping spree" (the most frequently awarded prize) is required to pay up to 12 percent of the cost of merchandise for shipping and up to an additional 12 percent for handling. Such a consumer may consequently be misled into thinking that he is receiving a much more valuable prize than he really is. After deducting 24 percent for fees (12 percent for shipping, 12 percent handling), a consumer actually receives a benefit worth substantially less than $5,000.

### B. Lottery

The elements of a lottery are the offering of a prize, for consideration, the distribution of which is based upon chance rather than entirely upon the basis of merit. *Eastman v. Armstrong–Byrd Music Co.*, 212 F. 662, 665 (8th Cir.1914); *United States v. Purvis*, 195 F. 618, 620 (N.D.Ga. 1912).

Allied contends that its business operation is not a lottery because no consideration is required to obtain a prize. It is true that the letter received by the consumer does not state that the consumer must buy something to get his prize. It is also true that if a consumer pushes a telemarketer hard enough, the telemarketer will disclose that the consumer need not make a purchase to receive a prize.

It appears, however, that Allied is making every effort to skirt the law under a facade of compliance. The consumer is told by a telemarketer from the beginning that Allied is not running a "something for nothing promotion." [2] Throughout the presentation, the telemarketer pressures the consumer to buy a water purifier or a test kit package. The overall tone and content of the exchange would lead an ordinary consumer to believe that he must buy before he can receive his prize.[3] *See American Testing Institute v. United States Postal Service*, 579 F.Supp. 1345, 1347 (D.D.C.1984). Only when a consumer specifically presses a telemarketer will the fact be disclosed that the consumer may receive a prize without paying any money. Under these circumstances, the court concludes that there is probable cause to believe that Allied's business practices are, in effect, a lottery.

### III. *Conclusion*

For the foregoing reasons, the application for preliminary injunctive relief is granted. Within five days of this date, counsel for USPS shall submit a form of injunction consistent with this memorandum order.

SO ORDERED.

---

**2.** Defendant's Exhibit 10 at 2.

**3.** As only one example of such conduct, when a caller asks about complaints to the Better Business Bureau, the telemarketer is directed to respond: "_____, those are not complaints from legitimate customers of ours. The complaints at the Better Business Bureau are from people that received the certificate and wanted something for nothing and like I said in the beginning this is not a something for nothing promotion!!! You understand that don't you? Good. Everyone who has purchased an H2OK water treatment unit has definitely received one of the four bonuses." Defendant's Exhibit 10.