**UNITED STATES POSTAL SERVICE, Plaintiff–Appellee,**

v.

**Andrew R. AMADA; Power Pick, Inc., an Arizona Corporation, d/b/a PowerPick, Defendants–Appellants.**

No. 98–15589.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 1998.

Decided Jan. 12, 2000.

Charles E. Buri (argued), Friedl, Richter & Buri, Phoenix, Arizona, for the defendants-appellants.

Jeanette Bison (argued), U.S. Postal Service, Washington, D.C., for the plaintiff-appellee.

Before: ALARCON, O'SCANNLAIN and FERNANDEZ, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide whether a lottery ticket pooling service itself constitutes a "lottery" within the meaning of federal anti-lottery statutes.

## I

PowerPick, Inc. ("PowerPick"), an Arizona corporation, operates a lottery ticket pooling service. PowerPick invites the general public to purchase participations in pools of twenty-five or fifty players and in turn purchases Arizona Lotto and Arizona Powerball Lottery tickets for each pool. PowerPick is not affiliated with either of the state lotteries.

The typical PowerPick player pays $22.00 to be a member of a fifty-player pool in eight consecutive drawings. PowerPick then purchases thirty-two tickets for each of the drawings on behalf of the pool. In the event that one of the number combinations chosen for the pool wins either of the lotteries, the prize money is divided fifty ways. Each player, therefore,

has 256 chances to win one fiftieth of a lottery prize.[1]

PowerPick assigns its participants to the various pools randomly. It picks the sets of numbers to play for each pool by a random computer program. Players are sent notification of the numbers their pool will be playing in the lotteries. After the state lottery drawings, PowerPick checks the numbers for each pool. If a pool wins a jackpot or similarly large prize, Power-Pick will give the state lottery the participants' names for distribution of the prize money. For smaller prizes, PowerPick will collect the winnings and divide them equally between the players.

For each pool of fifty players, Power-Pick receives $1,100.00 in fees from its participants. PowerPick spends $256.00 on tickets and uses the rest to pay business expenses, advertising, bonus tickets and promotional items. PowerPick gives out "special player awards," consisting of bonus state lottery tickets and scratcher tickets. These awards are allotted to players depending on the frequency and volume of their plays. PowerPick participants do not have to be Arizona residents but they must have an Arizona mailing address.

On November 3, 1997, the United States Postal Service ("USPS") issued a complaint and began administrative proceedings seeking an order that PowerPick cease conducting an impermissible "lottery." In order to prevent PowerPick from conducting business during the pendency of the administrative proceedings, the USPS filed for a preliminary injunction in U.S. District Court. The court granted the injunction on March 10, 1998, directing the USPS to detain PowerPick's mail pending the resolution of the administrative proceedings, including appeals.

■ PowerPick timely appealed from the district court's grant of the preliminary injunction.[2]

## II

PowerPick claims that the district court erroneously found its program to be a "lottery" for the purposes of 39 U.S.C. § 3005(a).

### A

Title 39 of the United States Code sets forth rules under which the USPS can control the use of the mail to prevent impermissible lotteries; Title 18 makes criminal the operation of impermissible lotteries.[3] The district court granted a preliminary injunction under 39 U.S.C. § 3007, which states:

> during the pendency of proceedings under sections 3005 or 3006 of this title, the United States district court in the district in which the defendant receives his mail shall, upon application therefor by the Postal Service and upon a showing of probable cause to believe either section is being violated, enter a temporary restraining order and preliminary injunction pursuant to rule 65 of the Federal Rules of Civil Procedure directing the detention of the defendant's incoming mail by the postmaster pending the conclusion of the statutory proceedings and any appeal therefrom.

1. Participants can buy more than one share in a particular pool in which case they would then get two fiftieths, three fiftieths etc. of the prize.

2. The district court's grant of a preliminary injunction is subject to limited review. *See F.D.I.C. v. Garner,* 125 F.3d 1272, 1276 (9th Cir.1997). The grant or denial of a preliminary injunction will be reversed only where the district court abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact. *See id.* USPS does not contend that we accord any special deference to its litigating position in this matter, and we do not do so.

3. PowerPick has been accused only of violating 39 U.S.C. § 3005 and has not been charged with violations of the criminal statutes.

39 U.S.C. § 3007. The district court concluded that there was probable cause to believe that PowerPick was conducting a lottery in violation of 39 U.S.C. § 3005.

Section 3005(a) provides that:

"Upon evidence satisfactory to the Postal Service that any person ... is engaged in conducting a lottery, gift enterprise, or scheme for the distribution of money ... by lottery, chance, or drawing of any kind, the Postal Service may issue an order which—(1) directs the Postmaster ... to return such mail to the sender...."

Section 3005(d) allows exceptions relating to official state lotteries:

Nothing in this section shall prohibit the mailing of (1) publications containing advertisements, lists of prizes, or information concerning a lottery, which are exempt, pursuant to section 1307 of title 18 of the United States Code, from the provisions of sections 1301, 1302, 1303 and 1304 of title 18 of the United States Code, [or] (2) tickets or other materials concerning such a lottery within that State to addresses within that State.

18 U.S.C. § 1307, referred to in § 3005(d), provides that:

(b) The provisions of sections 1301, 1302 and 1303 [4] shall not apply to the transportation or mailing—

(1) to addresses within a State of equipment, tickets, or material concerning a lottery which is conducted by that State acting under the authority of State law; ...

(d) For the purposes of subsection (b) of this section "lottery" means the pooling of proceeds derived from the sale of tickets or chances and allotting those proceeds or parts thereof by chance to one or more chance takers or ticket purchasers.

B

■ PowerPick argues that when it sends information and materials regarding the Arizona lotteries to addresses within Arizona, its actions are exempt under 39 U.S.C. § 3005(d). Indeed, we readily agree. PowerPick's sending of brochures encouraging participation in the lottery, entering participants in the lottery, and acting as liaison all appear permissible under section 3005(d). But that is not the end of the inquiry. The question remains whether PowerPick is *itself* in the business of conducting a "lottery."

C

■ The parties offer competing definitions of the term "lottery." PowerPick advocates the use of the definition in 18 U.S.C. § 1307(d); the USPS advocates the common law definition. PowerPick claims that, because 39 U.S.C. § 3005 and 18 U.S.C. § 1302 [5] have the same general purpose, they "must be construed in 'pari materia'" and, therefore, the definition in 18 U.S.C. § 1307(d) must control.[6]

The definition of "lottery" in § 1307(d), however, is expressly limited to § 1307(b); it does not provide a general definition of

---

**4.** Sections 1301, 1302 and 1303 are the criminal lottery statutes governing the transporting of lottery paraphernalia, tickets and information.

**5.** 18 U.S.C. § 1302 provides:
Whoever knowingly deposits in the mail, or sends or delivers by mail:
  Any letter, package, postal card, or circular concerning any lottery, gift enterprise, or similar scheme offering prizes dependent in whole or in part upon lot or chance ... [S]hall be fined under this title or imprisoned ...

**6.** PowerPick argues for application of the § 1307(d) definition of lottery because it is more restrictive than the common law definition advocated by the USPS. PowerPick contends that it falls outside of § 1307(d) because it does not pool proceeds derived from the sale of tickets or allot those proceeds by chance to the purchasers. Our resolution of this case makes irrelevant whether PowerPick would ultimately prevail on this argument and thus we need not address it.

the term. Rather, it describes those state-run lotteries that are exempt from federal criminal statutes. Thus, whether or not §§ 1302 and 3005 have the same general purpose is irrelevant for purposes of the § 1307(d) definition of "lottery." In light of the clear statutory language limiting that definition to subsection (b) of § 1307, we conclude, contrary to PowerPick's contention, that § 1307(d) cannot be used for the purposes of construing § 3005, the statute invoked by USPS in its application to the District Court.

We further agree with the USPS that there being no applicable statutory definition, the appropriate definition to apply is the common law lottery definition consistently used by the courts and described by the Supreme Court as the "traditional tests of chance, prize and consideration." *Federal Communications Commission v. American Broadcasting Co.*, 347 U.S. 284, 291 n. 8, 74 S.Ct. 593, 98 L.Ed. 699 (1954) ("*FCC v. ABC*"). *See also United States v. Tansley*, 986 F.2d 880, 886 (5th Cir. 1993) ("The term 'lottery' has been defined as a 'scheme for the distribution of prizes or things of value by lot or chance among persons who have paid ... a valuable consideration for the chance to obtain a prize' " (citation omitted)); *Marco Sales Co. v. F.T.C.*, 453 F.2d 1, 8 (2nd Cir.1971) ("the petitioner's game is a lottery since it combines the three elements (1) distribution of prizes, (2) by chance, (3) for a consideration"); *J.C. Martin Corp. v. F.T.C.*, 242 F.2d 530, 532 (7th Cir.1957) ("The three essential elements of a lottery are: (1) the distribution of prizes (2) according to chance (3) for a consideration"); *Brooklyn Daily Eagle v. Voorhies*, 181 F. 579, 581 (C.C.E.D.N.Y.1910) ("It has been held in numerous cases ... that the three necessary elements of a 'lottery' are the furnishing of a consideration, the offering of a prize, and the distribution of the prize by chance rather than entirely upon a basis of merit.").

In *FCC v. ABC*, the Court considered the "three essential elements of a 'lottery, gift enterprise or similar scheme': (1) the distribution of prizes; (2) according to chance; (3) for a consideration." *Id.* at 290, 74 S.Ct. 593. The Court decided that a radio broadcast give-away program was not a lottery under 18 U.S.C. § 1304 because the participants paid no consideration for the chance to receive a prize. *See id.* at 293–94, 74 S.Ct. 593. Although the Court in *ABC* considered a different substantive statute than the one at issue here, the relevant language is virtually the same.[7] Various courts have applied this three-part definition of lottery in the context of § 3005. *See BLC Services, Inc. v. United States Postal Serv.*, 1997 WL 122887, at *3 (D.D.C.1997) ( "Under Section 3005, a lottery, gift enterprise or similar scheme consists of three elements: (1) the offering of a prize; (2) the furnishing of consideration to receive the prize; and (3) the distribution of the prize by chance."); *American Testing Institute v. United States Postal Serv.*, 579 F.Supp. 1345, 1347 (D.D.C.1984); *United States Postal Serv. v. Allied Treatment, Inc.*, 730 F.Supp. 738 (N.D.Tex.1990).

■ Applying the common law definition of lottery in this case is not as simple as the USPS would suggest, however. Indeed the very phrasing of the definition in the passive voice creates some initial analytical confusion in analyzing whether PowerPick operates a lottery. In most cases, the issue is whether a lottery exists; here, it unquestionably does, and the State of Arizona runs it. The issue we must decide is whether PowerPick *also* runs one.[8] If

---

7. The *ABC* Court interpreted 18 U.S.C. § 1304, which reads, "lottery, gift enterprise or similar scheme." The language at issue here from 39 U.S.C. § 3005 is: "lottery, gift enterprise, or scheme for the distribution of money or of real or personal property, by lottery, chance, or drawing of any kind ..."

8. While arguing that PowerPick cannot benefit from the exemption provided for state-conducted lottery, the USPS concedes as

PowerPick can be charged with running a lottery then it is PowerPick that must offer the prize for consideration and distribute it according to chance. Thus, the definition as applied to PowerPick becomes: (1) whether PowerPick offers a prize; (2) whether the participants in the pool furnish consideration to PowerPick to receive the prize; and (3) whether Power-Pick distributes the prize by chance. A "no" answer to any one of these questions must lead to the conclusion that PowerPick does not run a lottery. On the facts of this case, we conclude that the answer to all three questions is "no."

First, PowerPick does not offer a prize. The State of Arizona offers any and all prizes distributable to a participant through PowerPick. USPS's argument does not convince us of the contrary. USPS reasons that because PowerPick provides its participants with the opportunity to win smaller prizes than they could through the state lottery, PowerPick offers a prize. But this argument ignores the fact that whatever the size of the prize, all the money always comes from the State of Arizona. Just as any lottery player who picks the same winning numbers as other players in the same drawing has to share the proceeds, so must the participants in the winning PowerPick pool share the prize offered by the state. PowerPick neither adds to nor subtracts from the state's offered prize.

Second, while participants in Power-Pick's pool furnish consideration to Power-Pick, they do not do so in order to receive the prize. Of each $22.00 participation, only $5.12 is actually spent by PowerPick to purchase lottery tickets. The remainder of the participants' money goes for PowerPick's services and promotional expenses. The consideration the participants "furnish ... to receive the prize," *BLC Services*, 1997 WL 122887 at *3, goes entirely to the State of Arizona. The re-

maining consideration goes to PowerPick, not so that the participants may receive a prize, but to pay for the many services provided by PowerPick. PowerPick purchases the tickets, fills out the forms by hand as required by law, pools the players, assigns numbers, and enters the players in every lottery drawing for a period of several weeks. In so doing, PowerPick not only reduces the workload of individuals wishing to facilitate their participation in the lottery, it also ensures that a lottery player will not inadvertently miss any drawing. After the drawing, if any of its pool participants have won, PowerPick notifies them and arranges for them to receive their share of the Arizona lottery prize money. We are satisfied that PowerPick participants pay PowerPick a consideration in exchange for these services, not to receive the prize.

Third, PowerPick does not "distribut[e] ... the prize by chance." *Voorhies*, 181 F. at 581. True, as the word is defined by *Webster's Dictionary*, PowerPick does "distribute" the prize in so far as it "divide[s] among several or many," and "give[s] out or deliver[s] especially to members of a group." *Webster's Ninth New Collegiate Dictionary* 368 (9th ed.1986). When the Arizona State Lottery chooses as the winner a ticket purchased by PowerPick for one of its pools, Power-Pick distributes the prize money to the members of that pool. PowerPick's actions can not fall within this third prong of the lottery definition, however, because it does not distribute the prize "by chance," i.e., by "something that happens unpredictably without discernible human intention or observable cause." *Webster's Ninth New Collegiate Dictionary* 225 (9th ed.1986). Here, the chance element is created and governed by the State of Arizona. USPS argues that PowerPick's pools increase the chance that its players will win. This is true, but irrelevant. The State

much: "The issue at bar, however, is whether PowerPick conducts its own lottery separate

and apart from the Arizona Lottery."

controls the chance that a particular number will be the winning one. It does so not only when it draws the number, but when it establishes how many numbers the winning number will include. The pool participants then agree to share the chance that they will win with other players (presumably allowing each of them to play more often) in exchange for their agreement to share any prize. None of this changes the simple fact that PowerPick does not distribute a prize by chance. Once the state has chosen its winners by chance, Power-Pick is obligated to distribute the Arizona lottery prize money according to a predetermined formula in which each member of the pool receives either one fiftieth or one twenty-fifth of the proceeds for each share purchased. PowerPick's distribution is by contract, not by chance.[9]

### III

PowerPick's activities, as distinct from those of the State of Arizona, do not satisfy any of the three elements of the common law definition of lottery. We hold, therefore, that the district court did not have probable cause to believe that Power-Pick conducts a lottery under 39 U.S.C. § 3005 in that PowerPick does not offer a prize for distribution by chance in exchange for consideration. Accordingly, the preliminary injunction must be vacated and the complaint dismissed.

Preliminary injunction VACATED; REMANDED with instructions to dismiss the complaint.

---

[9]. That PowerPick distributes additional lottery tickets to its members does not change this analysis because it does not do so according to chance. Rather PowerPick gives the tickets according to how often members play, whether they convince a friend to join, and other promotional bases which do not include an element of chance. Even if there were an element of chance, of course, PowerPick would still not be a lottery since the answer to the first and second questions is clearly "no."